ANNA YOUNGBERG v. THE DONLIN COMPANY AND
ANOTHER.

119 N. W. (2d) 746.

January 18, 1963—No. 38,310.

*Nemerov, Perl, Spector & Hunegs*, for relator.
*McLeod & Gilmore*, for respondents.

MURPHY, JUSTICE.

This is certiorari to review an order of the Industrial Commission denying compensation to the surviving spouse of a deceased employee.

From the record it appears that the deceased, Arthur Youngberg, was employed by The Donlin Company, a manufacturer of sash doors and millwork, as a warehouse superintendent. He had been employed by the company for a period of about 30 years prior to his death in April 1959. For about 10 years prior to his death he was a member of a bowling team sponsored by the employer. The team was composed of company employees and competed in an eight-team league. The employer furnished the shirts worn by the players on which was lettered the company name. The employer also paid the league entrance fee each year, as well as the entrance fee to one of the city tournaments. The individual members, including the decedent, paid for each line bowled, and there was no reimbursement for this expense by the employer. Transportation to and from the bowling premises was furnished by the individual employees. While the members of the team were encouraged to take an interest in bowling, the company did not compel them to do so. Their employment was in no wise dependent upon participation in this activity. There is no evidence in the record that the employer controlled the members of the team with reference to attendance or manner of participation.

The team bowled one night a week from 7 to 9 p. m. The employer had no financial interest in the activity. The players retained any surplus that was left at the end of the season. The company paid for a banquet for the bowlers and their wives at the end of each season, and occasionally one of the executives of the company would treat the bowlers if he stopped by to watch the team. A customer, the Hennen Lumber Company of Freeport, Minnesota, also had a team, and the two teams exchanged home games each year. On the

night of April 1, 1959, the decedent bowled as a member of the Donlin team and finished bowling about 9 p. m. On his return trip home in his own car, he was injured when the car left the road and struck a tree. He died from the effects of these injuries 2 weeks later.

The deceased's widow petitioned the Industrial Commission for benefits under the Workmen's Compensation Act. The claim was denied by the referee, and the denial was affirmed on appeal to the Industrial Commission. The petitioner has brought certiorari in this court to review that decision.

1. The decisive question involved is whether the injury and subsequent death of the employee came about as a result of an accident "arising out of and in the course of employment" within the meaning of Minn. St. 176.011, subd. 16, which provides:

" 'Personal injury' means injury arising out of and in the course of employment and includes personal injury caused by occupational disease; but does not cover an employee except while engaged in, on, or about the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service. Where the employer regularly furnished transportation to his employees to and from the place of employment such employees are subject to this chapter while being so transported, but shall not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment."

The relator concedes that the fatal injury did not arise out of and in the course of decedent's employment as a warehouse superintendent and that the accident did not occur on or about the employer's premises during hours of service. The relator recognizes the general rule that an injury to an employee in going to or returning from the employer's premises where his employment is carried on would not arise out of his employment so as to entitle him to compensation under the Workmen's Compensation Act. Nesbitt v. Twin City Forge & Foundry Co. 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165; Som-

mers v. Schuler Chocolates, Inc. 239 Minn. 180, 58 N. W. (2d) 194; Anderson v. Massachusetts Real Estate Co. 221 Minn. 593, 22 N. W. (2d) 680. The relator claims liability upon a theory which combines principles expressed in two lines of Minnesota authorities. It is asserted that on the night of the injury the decedent was returning from the performance of a work-related, recreational activity which was in the nature of a special errand or mission requested by his employer.

In support of the argument that the activity of bowling was related to decedent's employment, relator cites Le Bar v. Ewald Bros. Dairy, 217 Minn. 16, 13 N. W. (2d) 729. The Le Bar case presents a somewhat similar fact situation. In that case the employee, a member of a softball team sponsored by the employer, was accidentally injured in a game played. We there affirmed a decision of the Industrial Commission that the injury arose out of and in the course of employment. Unlike the employee in that case, the decedent here was not injured while engaged in the activity but was injured in an automobile accident on his way home from the game. But the relator attempts to bridge this gap by asserting that the rule that an employee may not be compensated for injuries sustained while going to or returning from the employer's premises does not apply when the employee is engaged in a special errand. The relator argues, under authority of Nehring v. Minnesota Min. & Mfg. Co. 193 Minn. 169, 258 N. W. 307, that at the time of the accident the employee was returning to his home from a special errand or service after customary working hours on a day on which he would not ordinarily work.[1] The so-called special errand rule upon which the relator relies is fully discussed in the Nehring case. In that case the employee, an electrician, was called by his employer on a Sunday to report to his place of employment to replace a fuse. While returning home on a

---

[1]See, also, Bengston v. Greening, 230 Minn. 139, 41 N. W. (2d) 185; Reese v. National Surety Co. 162 Minn. 493, 203 N. W. 442; Oestreich v. Lakeside Cemetery Assn. 229 Minn. 209, 38 N. W. (2d) 193; Cosgriff v. Duluth Firemen's Relief Assn. 233 Minn. 233, 46 N. W. (2d) 250; Locke v. County of Steele, 223 Minn. 464, 27 N. W. (2d) 285.

motorcycle, he was killed in a collision with an automobile. We recognized there that an injury sustained by an employee on his way home after a regular day's work would not be compensable because the accident would not then arise out of and in the course of employment and would not occur on the premises where the services were required or during the hours of ordinary service. We pointed out, however, that courts view emergency work from a different standpoint than the ordinary daily services performed for a wage. We there said (193 Minn. 171, 258 N. W. 308):

"* * * In his ordinary work the employe knows that he has to be at the proper place at a specified time to begin his services and continue them until a set time. Prior to the time set for beginning the service and after the services are ended for the day, the employe's time is his own, and he may dispose of it as he pleases. But if while so off duty from his regular employment he is called to do an errand or sent on a mission by the employer, the courts which have spoken on the subject hold it a special service begun the moment the employe leaves his home, or the place where the call comes to him, and ended only with his return."

From an examination of the authorities which discuss the so-called special errand rule it appears that it has been applied where (a) there is an express or implied request that the service be performed after working hours by an employee who has fixed hours of employment; (b) the trip involved on the errand be an integral part of the service performed; and (c) the work performed, although related to the employment, be special in the sense that the task requested was not one which was regular and recurring during the normal hours of employment.

It would seem unrealistic for us to reject the findings of the Industrial Commission under the facts in this case. To do so we would have to assume that the activity of bowling was an extension of the employee's regular employment and that the working premises were transferred to the bowling alley and the hours of employment were extended to include the time spent bowling. Even if we were to assume, contrary to the findings of the Industrial Commission, that the act of bowl-

ing had some relation to the decedent's employment, the special errand rule could not apply because it was a regularly scheduled weekly event and there was nothing about it to characterize it as a special job or errand or the trip itself as an integral part of the employment.

2. Since our holding that the injury sustained by the employee is not compensable within the principles embraced within the so-called special errand rule is dispositive of this case, it is necessary only to refer briefly to the claim of the relator that the activity of bowling was so related to his employment as to be within the purview of § 176.011, subd. 16. While, as we have heretofore noted, some of the facts in this case are similar to those in Le Bar v. Ewald Bros. Dairy, *supra*, there are other facts which distinguish it. An important difference is that the employee in the Le Bar case was injured while actually engaged in the company-sponsored activity. Moreover, the commission was of the view that under the particular facts in that case the degree of benefit which the employer derived from the activity was such as to make it "an essential part of their business." It appears from the authorities which have discussed the subject of accidents arising out of recreational activities[2] that coverage under the Workmen's Compensation Act must depend largely upon the relative extent of the employer's control and supervision and the degree of benefit the employer receives from the activity. Each case must be determined upon its particular facts. In the Le Bar case we affirmed the finding of the commission that the recreational activity was an incident of employment. We think the record here reasonably supports the commission's finding to the contrary. The participation of the decedent in the bowling activity was voluntary; he assumed and paid the weekly expense involved; there was no control or supervision of his participation by the employer; and he provided his own transportation.

---

[2] 1 Larson, Workmen's Compensation Law, § 22.11; Tocci v. Tessler & Weiss, Inc. 28 N. J. 582, 147 A. (2d) 783; Sorino v. Remington Rand, Inc. 1 App. Div. (2d) 720, 147 N. Y. S. (2d) 34; Geary v. Anaconda Copper Min. Co. 120 Mont. 485, 188 P. (2d) 185; Conklin v. Kansas City Public Service Co. 226 Mo. App. 309, 41 S. W. (2d) 608; 6 Schneider, Workmen's Compensation Text (Perm. ed.) c. 25; 23 U. of Chi. L. Rev. 328; 5 De Paul L. Rev. 337; 24 Tenn. L. Rev. 870.

In United Parcel Service v. Industrial Acc. Comm. 172 Cal. App. (2d) 73, 75, 342 P. (2d) 41, 42, it was said:

"* * * An injury sustained in an athletic contest is compensable, as incidental to employment and within the course of employment only when it occurs on the employer's premises during a lunch or recreation period as a regular incident of employment or in cases where the employer has expressly or impliedly required participation or attendance at the function or where the employer derives a substantial direct benefit from the employee's attendance at the function or his engagement in an athletic activity, beyond the intangible value of improvement in the employee's health or morale that is common to all kinds of recreation and social life, or where the activity is one contemplated by the contract of employment and the opportunity to engage in it is a part of the consideration to the employee for entering into the contract. (Larson, Workmen's Compensation Law, §§ 22:00-22:30; Hanna, The Law of Employee Injuries and Workmen's Compensation, vol. 2, pp. 171-173; Campbell, Workmen's Compensation, vol. 1, pp. 233-234; Reinert v. Industrial Acc. Com., 46 Cal. 2d 349 [294 P. 2d 713]; Winter v. Industrial Acc. Com., 129 Cal. App. 2d 174 [276 P. 2d 689]; Boynton v. McKales, 139 Cal. App. 2d 777, 790-791 [294 P. 2d 733].)"

It is true that under the circumstances here it might be inferred that the employer received some degree of benefit by encouraging its employees to engage in this activity. While it may be assumed that it provided an intangible value by way of improvement in the employee's health or morale, we do not think that it can fairly be said that the employer derived a substantial benefit from the employee's participation so as to characterize it as an activity contemplated by the contract of employment. Moreover, the commission found as a fact that the activity was not work-related and, since there is evidence reasonably supporting the commission's findings, they must be sustained.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.