PETER JONAS v. CLARA LILLYBLAD,
d.b.a. ST. JAMES HOTEL, AND ANOTHER.

137 N. W. (2d) 370.

September 17, 1965—No. 39,542.

*Spence, Baglio & Buckley* and *Ronald O. W. Ylitalo,* for relators.
*Holst, Vogel & Richardson,* for respondent.

NELSON, JUSTICE.

Certiorari to review an order of the Industrial Commission determining that an employee suffered a personal injury arising out of and in the course of his employment and granting his petition for compensation.

Peter Jonas, employee-respondent, had been an employee of the St. James Hotel of Red Wing, Minnesota, for approximately 21 years at the time of his injury. The general nature of his work had been to take care of the furnace and boiler at the hotel and to do general maintenance work around the hotel during the day, such as repairing doors, windows, screens, etc. The record indicates, however, that the employee's primary responsibility was to take care of the furnace. From approximately November 15 to April 1 the hotel employed another man to maintain the furnace from 6 p. m. to 6 a. m. From April 1 to June 1 and from September 15 to November 15, each year, Peter Jonas was solely responsible for the maintenance of the proper heat in the building, and during the summer months from June 1 to September 15 the furnace was shut off. However, Peter Jonas continued his regular employment at the hotel doing maintenance work on the furnace and around the hotel.

The Industrial Commission found that employee's normal hours of work were from 7 a. m. to 6 p. m. daily with the exception that during the summer months his hours were from 7 a. m. to 4 p. m.

The injury for which employee seeks compensation occurred shortly after midnight on April 26, 1961, at which time he was struck by an automobile while crossing an intersection on his way home from the hotel. On the day preceding the night of the accident employee began

his work about 7 a. m. After completing his normal maintenance functions on that date he left the hotel about 6 p. m. He went directly home, had his dinner, and then went out to a farm which he owned in the vicinity of Red Wing. He stayed on the farm about 2 hours. At about 8:30 he noticed that the weather was turning chilly and this prompted him to make a trip back to the hotel for the purpose of turning on the furnace. He then took a walk to Nybo's Bar, watched bowling until about midnight, and then went back to the hotel to shut off the stoker, not wanting the furnace left unattended all night. He immediately started for home, and as he crossed the street intersection in front of the hotel he was struck by an automobile and sustained the injuries which gave rise to this proceeding.

The question involved on this appeal is whether the injury occurred while the employee was returning home from a special mission for his employer and thus arose out of and in the course of his employment.

The statutory law applicable may be found in Minn. St. 176.021 and 176.011, subd. 16. It is provided by § 176.021 that an employer is liable to pay compensation in every case of personal injury or death of his employee arising out of and in the course of employee's employment. Section 176.011, subd. 16, states that personal injury means injury arising out of and in the course of the employment but that an employee is not covered except while engaged in, on, or about the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service.

In construing the provisions of the Workmen's Compensation Act it is always to be kept in mind that the act is highly remedial and should not be construed so as to exclude any employee from the benefits thereof unless it clearly appears that he does not come within the protection of the act. Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 9 N. W. (2d) 237; Moore v. J. A. McNulty Co. 171 Minn. 75, 213 N. W. 546.

■ It is well recognized by our decisions that an injury to an employee in going to or returning from the employer's premises where his employment is carried on would not arise out of his employment and entitle him to compensation under the act. Youngberg v. The Donlin Co. 264 Minn. 421, 119 N. W. (2d) 746. A recognized exception to the fore-

going rule arises, however, when an employee is going to or returning from "emergency work" or a "special mission" which he may have performed on behalf of his employer. See, 1 Larson, Workmen's Compensation, § 16. Since in the instant case the injury sustained by employee occurred while he was on his way home from the hotel where he was employed, he can only be brought within the coverage of the act if the work he performed on the night of April 26, 1961, on behalf of his employer can be considered a "special mission" or "errand" or the performance of "emergency work."

It appears that the so-called "special mission" or "special errand" doctrine was first applied in this state in Nehring v. Minnesota Min. & Mfg. Co. 193 Minn. 169, 258 N. W. 307. There, an electrician was asked by his employer on a Sunday to report to his place of employment for the purpose of replacing a fuse. While the employee was en route home on a motorcycle, he was killed in a collision with an automobile. This court recognized the general rule that an injury sustained by an employee on his way home from a regular day's work is not compensable for the reason that the accident did not arise out of and in the course of his employment, but we indicated that if an employee is off duty from his regular employment and is called to do an errand or to perform a special mission by the employer he is considered to be within the scope of his employment from the time he leaves his home until he returns to it. See, Bengston v. Greening, 230 Minn. 139, 41 N. W. (2d) 185.

In the Nehring case the employee had responded to some 25 emergency calls in 1932 up to June 12, the date of the fatal accident. He had been paid for such work $1 plus the regular wages for any time spent in excess of 15 minutes. This court indicated that that arrangement lent some force to the inference that the dollar was in part for the time going and coming and held that at the time of the injury the employee was in the course of his employment and thus the injury arose out of it. This court cited and discussed with approval the case of Reisinger-Siehler Co. v. Perry, 165 Md. 191, 167 A. 51. The Reisinger-Siehler case is strikingly similar to the instant case. In that case the injured employee was "responsible for the building" in which he performed his work. His regular hours of employment were from 6 a. m. to 6 p. m. In addition he was

subject to call at any time and on occasion worked as much as 18 or 20 hours a day. He was called to the store if a policeman reported some unusual condition of the lights or for any other reason which might require his attention. This additional work was considered by the employer as a part of his duty, and he was called to go on such errands by the employer from 15 to 20 times a year. Preceding the injury out of which the action arose the employee had been on a social engagement and upon returning home was informed by a neighbor that a policeman had been looking for him in connection with the store where he worked. He immediately went there and found the back door open. He locked it and shortly after carrying out this mission he began the walk home and while on the way home was struck by an automobile and injured, for which he sought compensation. The Maryland court recognized the general rule that a person is not covered by workmen's compensation when traveling to and from his place of employment but held that the general rule did not apply since there was an agreement under which the employee was covered while traveling to and from the store. This court quoted in the Nehring case from the decision in the Reisinger-Siehler case, which we think equally applicable here (165 Md. 198, 167 A. 53):

"The record does not disclose any express agreement between him and his employer relative to the duties that he was to perform, or the remuneration he was to receive. Under his regular employment, his duties were to remain at the store during the day; but, in addition to this, he was, as we have said, when at home, subject to further duties when called upon. The times when these duties were to be performed were uncertain, as he was to go to the store only when unusual conditions existed there. What he was to do and the length of time he was to remain there were equally uncertain.

\* \* \* \* \*

"There was, we think, an implied agreement, from the nature and character of the employment of the claimant in the performance of the additional duties, that his employment was not to be restricted to the time in which he was at work at the store on such occasions. It was in the nature of an errand or mission on behalf of his employer, and when so treated

his employment commenced at the time when he left his home to go to the store, and ended when he returned to his home."

Kyle v. Greene High School, 208 Iowa 1037, 226 N. W. 71, presents a situation quite similar to the one considered in the Reisinger-Siehler case. The employee, a janitor at Greene High School, had no regular working hours; he usually went to work about 5 a. m. and would continue until his work was completed. On certain occasions this janitor was called to the school building at night to perform special services. On the night of the accident out of which the case arose, he was contacted by the school principal and asked to come to the school building to turn on the gymnasium lights. On his way he was injured. The Iowa court held that he was within the course of his employment at the time of the injury and therefore was covered by the Iowa Workmen's Compensation Act. The court stated (208 Iowa 1041, 226 N. W. 73):

"* * * an emergency with reference to the lights had arisen at the schoolhouse. The janitor had completed his services for the day. In response to the call, he started in the performance of a special service or errand which was incidental to the nature of his employment and in the interest of his employer. He, as the employee, had the right to comply with the request for the special service. His going to perform the service was not personal to himself, but was incidental to his employment, and in the interest of his employer."

This court has applied the special mission or errand rule in Bengston v. Greening, 230 Minn. 139, 41 N. W. (2d) 185. The employee in that case left her home at the special request of her employer to go to his office on a Saturday, a day on which she was not ordinarily required to work, to perform a special duty. Her husband transported her by automobile to her employer's office and waited there for her to perform the special task and then brought her back to a point in front of their home. In walking from the car to the house, she fell on the sidewalk and was injured. This court affirmed the finding of the Industrial Commission that her injury arose out of and in the course of her employment.

The relators herein, employer and insurer, cite the following cases as controlling in their favor: Otto v. Duluth St. Ry. Co. 138 Minn. 312,

164 N. W. 1020; Cavilla v. Northern States Power Co. 213 Minn. 331, 6 N. W. (2d) 812; and Youngberg v. The Donlin Co. 264 Minn. 421, 119 N. W. (2d) 746. These cases are so completely distinguishable from the case at bar that it would serve no useful purpose for this court to enter into any discussion of them.

We are not cognizant of any clearly defined guidelines to follow when it comes to determining whether a particular factual situation falls within a special mission or errand doctrine. In Youngberg v. The Donlin Co. *supra,* Mr. Justice Murphy outlined the instances in which this doctrine has been applied (264 Minn. 425, 119 N. W. [2d] 749):

"* * * it has been applied where (a) there is an express or implied request that the service be performed after working hours by an employee who has fixed hours of employment; (b) the trip involved on the errand be an integral part of the service performed; and (c) the work performed, although related to the employment, be special in the sense that the task requested was not one which was regular and recurring during the normal hours of employment."

We do not find from the record any express request by the employer to the employee in the instant case to perform the service of turning the furnace on or off on those nights when necessary to maintain proper heat between April 1 and June 1 and from September 15 to November 15 each year. It seems clear, however, and the Industrial Commission so found, that a duty was in fact implied, for the employee was solely responsible for turning the furnace heat on and off during the foregoing periods; therefore the performance of this function by the employee appears to have been taken for granted by both employer and employee.

The dominant consideration is whether the service which employee performs is after working hours and one which was neither regular nor recurring during his normal hours of employment.

Relators contend that on the evening in question employee had been engaged in nothing more than a normal daily employment function. They point out that employee testified that he would leave the hotel at 5 p. m., have dinner, and then return to the hotel; that he did this every night, 7 days a week, until the temperature was such that furnace heat became

unnecessary. They also argue that the employee had testified that he did not consider his working hours to be through at 5 or 6 p. m. and that thus the employee was not "performing the type of 'emergency work' considered in the *Nehring* case during the night he was injured, nor can it be said that at that time he was on a 'special errand' or 'special mission' for his employer in accordance with the rule of the *Bengston* case." Employee, however, points out that he testified that when it was warm he would turn the heat off before he went home at 6 p. m. and that sometimes it would get cold and he would have to return to the hotel, as was the case on the night preceding the accident, and turn the heat back on. Employee further argues that the weather determined whether or not he had to go back to the hotel and that during the two months in the spring, when the night furnace man was off duty and the furnace was still on, he would have to go back to the hotel about 10 times.

The Industrial Commission in its opinion indicates a determination that the employer impliedly requested that the employee make a special trip to the hotel at night if the weather so demanded and that such task was not one which could be held to be regular and recurring after the normal hours of employment. Furthermore, the commission in its opinion says that the employee made ten or eleven return trips to the hotel during the spring after his regular hours for the purpose of turning on or shutting off the furnace.

Whether the employee's returning to the hotel after his normal daily working hours constituted a normal function of his regular job must be to some extent based upon the number of nightly returns which he was required to make during the period the night furnace man was off duty, in the spring and fall periods, and is, in our opinion, a question of fact. We must sustain the findings of the Industrial Commission on that issue if there is a sufficient basis in the evidence and the inferences to be drawn from the evidence to support such findings.

■ It is our view that there is some evidence to support either position but ample evidence to support the fact findings of the Industrial Commission. Therefore it would be our duty to affirm even if we did not wholly agree with the findings. The determination of questions of fact is for the commission. See, Casey v. Northern States Power Co. 247 Minn. 295, 77

N. W. (2d) 67; 21 Dunnell, Dig. (3 ed.) § 10426(13); Erickson v. Erickson & Co. 212 Minn. 119, 2 N. W. (2d) 824. If the findings of the Industrial Commission have ample support in the record, then the prevailing law as applied to those facts entitles the employee to a recovery.

The finding by the Industrial Commission that there was an implied agreement to care for the furnace when necessary clearly brings that issue within Reisinger-Siehler Co. v. Perry, *supra,* and other cases considered in this opinion. We think that the commission was justified in finding that the employee herein was not engaged in daily, regular, recurring trips to the hotel after normal hours but that those trips were in the nature of special errands or missions and that the injuries suffered by the employee thus arose out of and in the course of his employment.

The order of the commission is affirmed with $250 attorneys' fees awarded in favor of respondent.

Affirmed.