BILLIE MARIE JOHNSON v.
RANGE BLACKTOP COMPANY, INC., AND ANOTHER.

153 N. W. (2d) 823.

November 3, 1967—No. 40,256.

*Hugo A. Laine,* for relator.

*Montague, Applequist, Lyons, Nolan, Donovan & Knetsch* and *Arnold W. Larson,* for respondents.

SHERAN, JUSTICE.

Certiorari to review a decision of the Industrial Commission.

On July 13, 1963, at about 2 a. m. Norman Johnson was killed when

---

a car apparently operated by him in a northerly direction on State Highway No. 33 from Cloquet, Minnesota, left the road at the intersection of State Highways No. 33 and No. 53. The Industrial Commission rejected a petition for benefits under the Workmen's Compensation Act, finding that the accident did not arise out of and during the course of the decedent's employment by Range Blacktop Company, Inc.

Our conclusion that the evidence does not require a contrary finding compels affirmance.

For several years before the accident, Norman Johnson had been employed by the Range Blacktop Company of Eveleth, Minnesota, performing supervisory and mechanical work at various locations where the company was installing blacktop surfacing for streets, roads, and parking lots. He was paid $150 a week for his services and in a general way was expected to spend approximately 40 hours each week in the performance of his duties. No definite hours were fixed for him, and it seems the time and places of his employment varied considerably depending upon the site of the jobs secured by his employer. Of necessity the work of his employer requires the use of mechanical equipment including pavers, rollers, and trucks.

On July 12, 1963, the decedent spent the day working at Eveleth repairing equipment in a repair shop maintained by the employer. He completed his work on that day at about 5 p. m. He had been instructed to report the following day at Ely, Minnesota, about 55 miles north of Eveleth, where some blacktopping was to be commenced. Although he had been working with one of the principal owners of the shop throughout the afternoon of July 12, the record discloses no instruction or plan for him to go to his home near Cloquet, Minnesota, that night. Cloquet is about 60 miles south of Eveleth—the direction just opposite that of Ely where he was to report the next morning. At about 1 a. m. on the morning of July 13, 1963, Mr. Johnson arrived at his home, where he was served a meal by his wife. Apparently he left his home shortly thereafter because a report was received by the Highway Patrol at Duluth, Minnesota, at approximately 2:20 a. m. relating to the accident which had brought Mr. Johnson to his death. A large tool chest (with a small one encased) was observed in the trunk of his car at the scene of the ac-

cident. The tools were of a kind generally usable in the repair of the equipment owned by the Range Blacktop Company. The employee's wife testified that she had observed this box of tools at their home on July 12.

It is clear that the decedent was not engaged in the regular course of his customary duties at the time of the fatal accident. He was apparently en route to Ely, Minnesota, where he was to report for work at 7 a. m. that morning, but this fact by itself does not make the accident employment-related. Youngberg v. The Donlin Co. 264 Minn. 421, 119 N. W. (2d) 746. Relator contends, however, that the evidence establishes that at the time and place of the accident, the decedent was performing a special errand for his employer within the rule of such cases as Bengston v. Greening, 230 Minn. 139, 41 N. W. (2d) 185, and Youngberg v. The Donlin Co. *supra.*

We do not believe it possible for us to hold as a matter of law that the preponderant purpose of Mr. Johnson's trip to Cloquet from which he was returning at the time of the accident constituted a special errand for his employer within the meaning of these authorities. There is no evidence of any direct request on the part of decedent's employer that he go to Cloquet for any specific tool to be used on the job, although the evidence does indicate that Mr. Johnson was expected to provide his own tools for whatever mechanical work might be required to maintain the equipment at the Ely job site. If Mr. Johnson was motivated to make the trip to Cloquet in order to further the interest of his employer, it is unusual that he did not say or do something to indicate that this was his plan before he left Eveleth. If his principal purpose in going to Cloquet was to secure his tools, it is difficult to understand why he did not appear at his home there until 1 a. m. on the morning of the 13th, 6 hours before his work day was to have started at Ely. While driving the automobile from Eveleth to Cloquet could account for approximately 1½ hours of this time, there is no explanation in the record to shed light on what the decedent had been doing during the balance of this interval. The tools which he obtained at his home were not so unique as to make it imperative for him to get them at that particular time. There is no evidence that he had any particular mechanical assignment to be performed on July 13

at Ely calling for the application of any specific tool owned by him. The picture derived from the evidence is not so clear as to justify us in reversing the decision of the Industrial Commission to the effect that relator had failed to establish that a special errand for the employer gave rise to the accident.

The determination of the Industrial Commission is also based on the ground that the intoxication of the employee was a proximate cause of the injury. Relator contends that this finding by the Industrial Commission is without adequate support in the evidence. Our decision that the decedent was not in the course of his employment when the accident occurred makes resolution of this aspect of the case unnecessary.

Affirmed.