STATE OF MINNESOTA

IN SUPREME COURT

A24-1989

Workers' Compensation Court of Appeals
        Hennesy, J.
        Concurring, McKeig, J.

Cindy Ludwig,

        Respondent,

vs.
        Filed: April 22, 2026
        Office of Appellate Courts

Dakota County,
Self-Insured by
SFM Risk Solutions,

        Relator.

_____

William G. Laak, Brian J. Kluk, Hannah K. Johnson, McCollum Crowley, P.A., Minneapolis, Minnesota, for relator.

Eric S. Schwab, Joshua M. Harrison, Meuser, Yackley & Rowland, P.A., Eden Prairie, Minnesota, for respondent.

_____

S Y L L A B U S

1.    The Workers' Compensation Court of Appeals did not make an impermissible factual finding when it applied the special-errand exception because the finding and its supporting inference were not manifestly contrary to the evidence.

2.     The Workers' Compensation Court of Appeals did not err as a matter of law by concluding that the employee's injury was compensable under the special-errand exception to the general rule that an employee's injury that occurs while commuting to and from work is not compensable.

Affirmed.

O P I N I O N

HENNESY, Justice.

This case is about whether respondent Cindy Ludwig's injury—sustained while transporting equipment back to her office to resume working in-person, at her employer's request, after working remotely from home—is compensable under the Workers' Compensation Act.  Generally, an employee's injury that occurs while commuting to and from work is not compensable.  But Ludwig argues that because she was injured while on a "special errand" for her employer, relator Dakota County (the County), her injury is compensable under the special-errand exception to this general rule.  The compensation judge concluded that the special-errand exception did not apply because Ludwig's injury occurred when she returned "her equipment to the job site" as "part of her commute."  The Workers' Compensation Court of Appeals (WCCA) reversed, finding that the County's request that Ludwig return to the office to begin a new hybrid schedule included an implied request that Ludwig return her office equipment before her regular shift, thus qualifying Ludwig's return-to-office trip as a special errand.

To determine whether Ludwig's injury is compensable under the special-errand exception, we must first decide whether the WCCA erred in its special-errand-exception

2

analysis by finding that the County's request that Ludwig return to the office to begin a new hybrid schedule included an implied request that she return her office equipment before her regular shift. We conclude that the WCCA did not err because the WCCA drew this factual inference about an issue on which the compensation judge made no finding, and the finding it made based on this inference was not manifestly contrary to the evidence. Next, we consider whether the WCCA erred as a matter of law by concluding that Ludwig was on a special errand when the County directed her to return to the office and implicitly requested that she return with all her work equipment early enough to begin her regular shift. We conclude that the WCCA did not err as a matter of law by concluding that Ludwig's injury was compensable under the special-errand exception. We therefore affirm the WCCA's decision.

## FACTS

In 2002, the County hired Ludwig to perform full-time clerical and customer service duties out of its Hastings office. Ludwig's commute to Hastings was half an hour, so she typically left home around 7:30 a.m. every morning to begin work by 8:00 a.m. The County owned all the equipment Ludwig used at the office.

In March 2020, the County issued a stay-at-home order due to the COVID-19 pandemic, requiring Ludwig to work from home full-time. Ludwig boxed up all her work equipment and took it home. This equipment included her laptop, monitors, cords, docking station, keyboard, headset, and binders. She also brought home her office chair.

During a 2021 conference call, Ludwig's managers told her that she would need to return to the office on September 8, 2021, to begin a new hybrid schedule. The day before

3

returning to in-person work, Ludwig packed her work equipment—including all the electronic equipment she had brought home—in a large plastic bin.

On September 8, 2021, Ludwig planned to leave earlier than usual for work to give herself time to set up her equipment before starting her workday at 8:00 a.m. She carried the bin of equipment to her car at 7:15 a.m., 15 minutes earlier than her normal departure time. While loading the bin into her van, Ludwig fell to the ground, injuring her back. She notified the County of the injury and sought medical care. She returned to work on September 15, 2021, using a cane to walk and a wheeled bag to transport her work equipment. Ludwig filed a claim petition for payment of medical expenses and wage loss benefits on March 22, 2022, and the matter came before a workers' compensation judge for an evidentiary hearing on December 21, 2023.[1]

Ludwig argued that her injury was compensable under the Workers' Compensation Act. Even though injuries sustained while commuting to and from work are generally not compensable, Ludwig argued that her injury qualifies for either the special-hazard[2] or special-errand exception because the injury occurred while she was loading her work equipment to begin a hybrid schedule, at the County's request, after working at home for a long period of time during the pandemic.

---

[1]     After the September 8 injury, Ludwig sustained two more injuries on October 29, 2021, and May 7, 2022. The compensation judge made findings as to all three injuries, but only the September 8 injury is relevant to this appeal, and it is the only injury to which we refer in this opinion.

[2]     The compensation judge found the special-hazard exception inapplicable to the facts here, and the WCCA affirmed that decision. Ludwig does not challenge that decision in this appeal.

Relying on the WCCA's decision in *Thompson v. Minnesota Trial Courts – District 4*, No. WC23-6519, 2024 WL 461731 (Minn. WCCA Jan. 26, 2024), *aff'd without opinion*, 13 N.W.3d 910 (Minn. 2024) (concluding employee's injury did not occur on a special errand because his task of returning his equipment to the office was "merely incidental to his regular commute to work"), the compensation judge concluded that the special-errand exception did not apply because Ludwig had been returning her equipment to her office as "a part of her commute." As such, the compensation judge determined that Ludwig's injury was not compensable.

Ludwig appealed to the WCCA, arguing that the compensation judge erred by misapplying the WCCA's special-errand holding in *Thompson*. The WCCA distinguished *Thompson*, reasoning that the employee in *Thompson* acknowledged that backup equipment was available on-site and *Thompson*'s record lacked any evidence of a directive for the employee to return his equipment, whereas Ludwig had been "returning office equipment to the employer by request" when injured, and there was no evidence that backup equipment was available at Ludwig's office.[3] *Ludwig v. Dakota County*, No. WC24-6562, 2024 WL 4981499, at *6 (Minn. WCCA Nov. 25, 2024). Therefore, the WCCA reversed the compensation judge's decision, concluding that the compensation judge had erred by not applying the special-errand exception. *Id.* The County appealed.

---

[3] The WCCA also noted that the compensation judge's application of the special-errand exception was flawed in considering whether the bin fell on Ludwig as she loaded it into her car, a fact that is irrelevant to the special-errand exception. We agree and do not address this issue in our analysis.

*See* Minn. Stat. § 176.471, subd. 1 (authorizing our review of WCCA decisions by writ of certiorari).

## ANALYSIS

Generally, an injury that occurs while an employee is traveling to and from work is not compensable under the Workers' Compensation Act. *Jonas v. Lillyblad*, 137 N.W.2d 370, 372 (Minn. 1965). There are, however, exceptions to this general rule. *See Villebrun v. Fryrear*, 183 N.W.2d 279, 281 (Minn. 1970) (naming exceptions to the rule that employees are not covered when going to or from work). Among these, the special-errand exception allows an employee to receive workers' compensation benefits for an injury sustained in the process of carrying out a "special errand" or performing a "special mission" for the employer. *Jonas*, 137 N.W.2d at 372. This is because, when an employee is on a special errand, the employee "is considered to be within the scope of his employment from the time he leaves his home until he returns to it." *Id.*; *see also Bengston v. Greening*, 41 N.W.2d 185, 186 (Minn. 1950) (concluding that an employee was covered by the special-errand exception when she fell while walking into her house as she returned home from a special errand).

The parties' dispute in this appeal concerns whether Ludwig's injury falls under the special-errand exception. The County argues the WCCA erred by making an impermissible factual finding in Ludwig's favor—that the County implicitly requested that Ludwig return her equipment to the office before her regular shift—a finding of fact the compensation judge never made. The County also asserts the WCCA erred as a matter of

6

law by concluding that Ludwig's "collection and transportation of her equipment" falls under the special-errand exception. We address each argument in turn.

## I.

The first issue we must resolve is whether the WCCA erred by finding that the County's return-to-office order included an implicit directive for Ludwig to return her work equipment before her regular shift. When reviewing workers' compensation cases, we first determine whether the WCCA's findings of fact conflict with the compensation court's findings. *Lagasse v. Horton*, 982 N.W.2d 189, 201 (Minn. 2022). No conflict exists when "the WCCA affirmed the findings of the compensation judge or the WCCA makes a finding on an issue about which the compensation judge made no finding." *Id.* at 202. A conflict exists, however, when the WCCA substitutes its own findings for those of the compensation judge. *Id.* at 201. "This rule on substitution applies to express findings by the compensation judge, implicit findings of the compensation judge when the compensation judge has specifically considered the issue, and to findings on ultimate questions of fact." *Id.* at 203.

The record in this case establishes that the WCCA made one express finding that the compensation judge did not—that the County's return-to-office directive required Ludwig to return her equipment to the office before her regular shift. As such, if any conflict exists, it is between this express finding by the WCCA and an implicit finding by the compensation judge that the County's directive did not include such a requirement.

A WCCA finding only conflicts with a compensation judge's implicit finding, however, when the compensation judge specifically considered the issue. *See id.* Here,

7

the compensation judge began her analysis by stating the general rule that an injury that occurs while an employee is going to or coming from work is not compensable under the Workers' Compensation Act, but acknowledged that the special-errand exception allows compensation for an injury sustained during a special errand. Then, relying on the WCCA's decision in *Thompson*, the compensation judge concluded that the special-errand exception to the general rule did not apply because "[Ludwig's] return of her equipment to the job site represented a part of her commute." Because the compensation judge did not specifically consider whether the County requested that Ludwig return her work equipment outside of her normal working hours, the judge made no express, implicit, or ultimate findings on this issue. We therefore conclude that there is no factual conflict between the compensation judge's silence on this issue and the WCCA's express finding that the County's return-to-office directive required Ludwig to return her equipment to the office before her regular shift.

Because no conflict exists, we will uphold the WCCA's findings unless they are manifestly contrary to the evidence. *Lagasse*, 982 N.W.2d at 202. The WCCA found that the County's return-to-office directive required Ludwig to return her equipment before her regular shift. This finding is not manifestly contrary to the evidence. The evidence shows that in March 2020, pursuant to the County's work-from-home order, Ludwig transported all her County-owned equipment home to work remotely. The County expressly directed that she return to the office on September 8, 2021, to begin work at 8:00 a.m. Ludwig got an early start to ensure she arrived in time to set up her workstation before her shift began

8

at 8:00 a.m.[4] She needed her work equipment to do her job, and there is no evidence to suggest that backup equipment was available at the office. Further, there is no evidence in the record contradicting the WCCA's finding that the County's return-to-office order included an implied request that Ludwig return her equipment before her shift began. The WCCA's findings withstand review under this deferential standard.

Our case law requires us to give great deference to the WCCA's additional findings when they do not conflict with the compensation judge's findings. *Id.* at 202. Because the WCCA's finding that the County's directive included an implied request for Ludwig to return with her work equipment before her regular shift was not manifestly contrary to the evidence, we conclude that the WCCA did not err in making this finding.

## II.

Having concluded that the WCCA's findings were not manifestly contrary to the evidence, we now consider whether the WCCA erred as a matter of law in concluding that Ludwig's injury is compensable under the special-errand exception. We review this question de novo. *Lagasse*, 982 N.W.2d at 205.

In *Youngberg v. Donlin Co.*, we reviewed the history of our application of the special-errand exception and noted that "it has been applied" in cases where

> (a) there is an express or implied request that the service be performed after working hours by an employee who has fixed hours of employment; (b) the trip involved on the errand be an integral part of the service performed; and (c) the work performed, although related to the employment, be special in

---

[4] The County points out that the compensation judge did not include this testimony in her findings of fact. Nevertheless, the compensation judge did cite this testimony in her analysis, never found that the testimony was not credible, and made no findings in conflict with the testimony.

9

the sense that the task requested was not one which was regular and recurring during the normal hours of employment.

119 N.W.2d 746, 749 (Minn. 1963).[5] We held that the exception applied, for example, in *Nehring v. Minnesota Mining & Manufacturing Co.*, where an employer expressly requested that an employee perform an emergency task outside of normal work hours and the employee was injured while driving home from that task. 258 N.W. 307, 307, 309 (Minn. 1935). And in *Bengston v. Greening*, we concluded that an employee was on a special errand for her employer when she was asked to come to work outside of her normal office hours to do additional work and was injured on her way home. 41 N.W.2d at 186.

Consistent with *Youngberg*, *Nehring*, and *Bengston*, we conclude that Ludwig was on a special errand for her employer when she was injured. The circumstances of Ludwig's injury qualify under each of the circumstances we identified in *Youngberg* in which we have previously found the special-errand exception applicable. 119 N.W.2d at 749. First, there was an "express or implied request that the service be performed after working hours by an employee who has fixed hours of employment." *Id.* The County directed Ludwig to return to the office to begin her new hybrid schedule on September 8, and implicitly

---

[5] The County argues that *Youngberg* establishes three required elements necessary to qualify for the special-errand exception. We have never recognized such a rule. Instead, we have noted that the "dominant consideration" in determining whether the special-errand exception applies "is whether the service which [an] employee performs is after working hours and one which was neither regular nor recurring during his normal hours of employment." *Jonas*, 137 N.W.2d at 374. Here, because Ludwig's trip transporting her work equipment back to the office qualifies under all three circumstances, we need not decide whether every application of the special-errand exception must do so, or whether the circumstances identified in *Youngberg* constitute a comprehensive list of scenarios in which the special-errand exception applies.

requested that she return all her equipment "before her working hours" to set up her workstation and begin work by her normal worktime. Ludwig testified that while her normal commute began at 7:30 a.m., she had to leave earlier the morning she was injured to return her equipment, set up her workstation, and begin work promptly at 8:00 a.m. Second, "the trip involved on the errand" was "an integral part of the service performed." *Id.* Ludwig's trip to her office that day included an errand (i.e., returning her equipment) that was an integral part of the service she performed because she needed her equipment in order to work. And third, "the work performed, although related to the employment" was "special in the sense that the task requested was not one which was regular and recurring during the normal hours of employment." *Id.* Ludwig's task of returning *all* her work equipment was not a regular one as it would only happen once, on this initial trip back to the office. *See id.* We therefore conclude that the WCCA did not err as a matter of law by concluding that Ludwig's injury was compensable under the special-errand exception.

The County argues that this case is more like *Johnson v. Range Blacktop Co.*, where we held that an employee was not on a special errand when he died in a car collision while driving to work. 153 N.W.2d 823, 824–25 (Minn. 1967). The employee in *Johnson* worked a 40-hour week but "the time and places of his employment varied considerably depending upon the site of the jobs secured by his employer." *Id.* at 823–24. The evidence indicated that Johnson's employer expected him to provide his own tools "for whatever mechanical work might be required" and that the collision occurred when Johnson was on his way to work after picking his tools up from his house. *Id.* at 824. We concluded that there was no evidence Johnson's employer directly requested that he return home to

retrieve his tools or that he would need those particular tools at the job site that day. *Id.* at 824–25.

The County argues that here, as in *Johnson*, Ludwig "was simply [directed] to report to work at a particular place," and that it was Ludwig's decision to bring her equipment. But this case is significantly different from *Johnson*, because the WCCA found that the County implicitly requested that Ludwig return her equipment to the office and set up *before* she began her shift. This implicit request turned a directive to report to work at a normal place and time into an errand conducted outside of normal work hours.

We acknowledge that in a world of hybrid work, it is unlikely that every worker performs a compensable special errand by transporting equipment associated with their job on their regular commute. But this case does not concern an employee's regular day-to-day commute pursuant to an established hybrid work schedule. Ludwig's injury occurred while she was returning to her office with her equipment for the first time following a prolonged work-from-home order during the pandemic, to begin—for the first time—a new hybrid schedule, at the County's request. In applying the special-errand exception analysis to these particular facts, we hold that the WCCA did not err as a matter of law by concluding that Ludwig's injury was compensable under the special-errand exception.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the WCCA.

Affirmed.

12

CONCURRENCE

MCKEIG, Justice (concurring).

I concur with the court's conclusion that the Workers' Compensation Court of Appeals' (WCCA) finding that the County's directive that Ludwig return to the office also required her to return her equipment before her regular shift is not manifestly contrary to the evidence. Accordingly, under our standard of review set forth in *Lagasse v. Horton*, 982 N.W.2d 189, 202 (Minn. 2022), we must affirm the WCCA's finding. And based on the WCCA's finding, I likewise concur that the WCCA did not err by concluding that Ludwig's injury was compensable under the special-errand exception. I write separately for two reasons. First, while I agree that our deferential standard of review requires that we affirm the WCCA's finding, I question the WCCA's application of and findings of fact concerning the special-errand exception. Second, in my view, the court today misses a valuable opportunity to clarify the special-errand exception for today's world of hybrid work.

A.

As the court explains, the WCCA applied its special-errand-exception analysis from *Thompson v. Minnesota Trial Courts – District 4*, No. WC23-6519, 2024 WL 461731 (Minn. WCCA Jan. 26, 2024), *aff'd without opinion*, 13 N.W.3d 910 (Minn. 2024). Accordingly, the WCCA focused on two factual questions: (1) whether the County had requested Ludwig return her equipment to the office before her regular shift; and (2) whether there was backup equipment available for Ludwig to use in the office. *Ludwig v. Dakota County*, No. WC24-6562, 2024 WL 4981499, at *5 (Minn. WCCA Nov. 25, 2024).

C-1

I first address the WCCA's wholesale treatment of Ludwig's "work equipment" before addressing the questions of backup equipment and the request.

My first disagreement with the WCCA's approach arises from its treatment of Ludwig's work equipment as a single unit despite ample evidence in the record that Ludwig would regularly transport *most* of this equipment back-and-forth from the office as part of her regular hybrid work schedule. The record was clear that Ludwig was starting a hybrid schedule that required her to transport most of her work equipment (laptop, three-ring binder, cords, paper, laptop docking station, headset, and keyboard) between her home and her workplace each week. On the day in question, Ludwig was *also* going to transport equipment she would leave at the office (monitors and office chair). Because Ludwig was transporting equipment she would regularly transport as part of her hybrid schedule *and* equipment she would leave at the office, the only equipment relevant to the special-errand exception is the equipment that Ludwig would not transport regularly—the monitors and office chair. But the WCCA simply treated Ludwig's "work equipment" as a single unit. *Id.* (stating that Ludwig "needed the bin of equipment to do her job"). In my opinion, it was inappropriate for the WCCA to consider the other equipment as part of its special-errand-exception analysis because that other equipment would be transported as part of Ludwig's regular commute.

My second concern with the WCCA's approach relates to the WCCA's decision to make a factual finding regarding the existence or nonexistence of backup equipment. To distinguish this case from *Thompson*, the WCCA found there was no evidence in the record that there was backup equipment available for Ludwig to use in the office. *Id.* But rather

than remanding for the compensation judge to make this factual finding, the WCCA inexplicably concluded that an absence of evidence in the record meant an absence of backup equipment altogether, stating that "there was no evidence in the record that the equipment needed for [Ludwig's] job was available to the employee on-site." *Id.* An employee bears the burden of proof to establish facts showing the injury "aris[es] out of and in the course of employment" and is therefore compensable. Minn. Stat. § 176.021, subd. 1. Ludwig offered no evidence regarding the availability (or lack thereof) of backup work equipment on-site. Because the WCCA remanded to the compensation judge to make factual findings regarding "the nature and extent of the injury and what benefits, if any, are due and owing as a result of the . . . work injury," it would have been logical and appropriate for the WCCA to instruct the compensation judge to make a factual finding regarding the existence or nonexistence of any backup equipment. *Ludwig*, 2024 WL 4981499, at *6.

My third concern arises from the WCCA's factual finding regarding the implicit request. The WCCA also made a factual finding that the County's directive for Ludwig to return to the office included an implicit request to return her equipment to the office before her regular shift because Ludwig needed that equipment to work in the office. *Id.* at *5. I question the WCCA's factual finding here because, as I discuss above, unlike the WCCA, I do not conclude that the record unequivocally supports an inference that Ludwig required *all* of the equipment she transported on September 8, 2021, to work in the office.

Ultimately, however—notwithstanding these concerns and my disagreement with the WCCA's approach in this matter—our standard of review is clear: where there is no

conflict between the compensation judge's and the WCCA's findings, we are required to uphold the WCCA's findings unless they are manifestly contrary to the evidence. *Lagasse*, 982 N.W.2d at 202. While I find that the WCCA's findings are unsupported by the record, a lack of support does not rise to the level of "manifestly *contrary* to the evidence." I reluctantly concur with the court's conclusion that we must affirm the WCCA's findings.

B.

While we are bound to a highly deferential standard of review when reviewing the WCCA's findings, whether the special-errand exception applies to the WCCA's findings is a question of law we review de novo. *Lagasse*, 982 N.W.2d at 205. The court concludes that Ludwig satisfies each of the three circumstances we discussed in *Youngberg v. Donlin Co.*, 119 N.W.2d 746, 749 (Minn. 1963), but sidesteps the question of whether an employee *must* satisfy all three circumstances set forth in *Youngberg*.[1] *Supra* at 10 n.5.

By concluding that Ludwig satisfies each of the three circumstances we identified in *Youngberg*, the court effectively expands the special-errand exception in a way that is untenable for today's world of hybrid work. A fairly typical hybrid work scenario where an employee transports, for example, her laptop back-and-forth to work a few times each week would very likely satisfy *each* of the circumstances set forth in *Youngberg*, thereby effectively collapsing any distinction between the coming-and-going rule and the special-errand exception for this class of employees. The first *Youngberg* circumstance would be satisfied because such an employee could demonstrate that there was, at a minimum, an

---

[1]    I note that in *Villebrun v. Fryrear*, 183 N.W.2d 279, 281 (Minn. 1970), we described these as "[r]equirements."

C-4

implied request to transport her laptop to-and-from work outside of her working hours. *See* 119 N.W.2d at 749. The second *Youngberg* circumstance would be satisfied because such an employee could easily argue that transporting her laptop was an "integral part" of the service performed for her employer. *Id.* And the third *Youngberg* circumstance would be satisfied because the task would not "recur[] during the normal hours of employment." *Id.*

I would instead clarify that when an employee regularly transports her work equipment to work as part of her hybrid schedule, the special-errand exception does not apply because the transportation of her work equipment is part of her regular commute. *Id.* Commuting with a laptop and other work equipment, in such routine circumstances, is not an errand that is an integral part of the service performed any more than the requirement that the employee themself commute to and from the office. And "[i]t is well recognized by our decisions that an injury to an employee in going to or returning from the employer's premises where his employment is carried on would not arise out of his employment and entitle him to compensation under the act." *Jonas v. Lillyblad*, 137 N.W.2d 370, 372 (Minn. 1965). Accordingly, the second circumstance identified in *Youngberg* is not satisfied and the employee may not invoke the special-errand exception. If the employee transports additional work equipment that will *stay* at work, the special-errand exception applies if the employee proves it was necessary to bring the equipment back to work. To prove necessity, the employee must prove that she cannot obtain a materially similar item, such as another office chair or monitor, from supplies at her workplace. If the employee proves it was necessary to bring the equipment back to work, she satisfies the second circumstance

identified in *Youngberg* because her transportation of such necessary equipment is an "integral part" of the trip. *Id.*

Here, given the WCCA's factual finding that there was no backup equipment available at the office and our affirmance of that factual finding according to our standard of review, Ludwig would satisfy this clarified special-errand exception. In the absence of the WCCA's factual finding, however, Ludwig would have had to offer evidence, for example, that no backup monitors were available onsite in order to establish that transporting the monitors was an "integral part" of her trip.

By simply concluding that Ludwig satisfies each of the circumstances set forth in *Youngberg*, the court foregoes a valuable opportunity to clarify how the special-errand exception applies to employees transporting work equipment as part of their hybrid schedule. Instead, the court effectively expands the special-errand exception such that the distinction between the special-errand exception and the coming-and-going rule is, at a minimum, blurred beyond recognition.

Accordingly, I concur.