## LORRAINE M. LANGE v. MINNEAPOLIS-ST. PAUL METROPOLITAN AIRPORTS COMMISSION AND ANOTHER.

99 N. W. (2d) 915.

December 11, 1959—No. 37,774.

*Rischmiller, Wasche & Hedelson,* for relator.
*Scholle & Schweiger,* for respondents.

DELL, CHIEF JUSTICE.

Certiorari to review a decision of the Industrial Commission denying compensation benefits.

Wesley M. Lange was employed by the Minneapolis-St. Paul Metropolitan Airports Commission, hereinafter referred to as the employer, in July 1957 as an airport supervisor at Flying Cloud Airport. On September 30, 1957, he was fatally injured in an airplane crash at that airport. The sole question presented for review is whether the accident arose out of and in the course of Lange's employment entitling his widow and dependent children to compensation benefits.

Lange's duty, generally speaking, was to maintain the field in a safe condition. Among other things he would place warning flags in unsafe areas, observe aircraft in the traffic pattern, report violations of traffic regulations, and maintain runways and field markers. At the time of the accident a new runway was under construction and Lange was also responsible for placing white crosses on this runway to indicate that it was not to be used.

Lange was a licensed pilot with an extensive aviation background. While this background was admittedly a desirable qualification, he was specifically instructed when employed that flying aircraft was not a part of his duties nor permitted during working hours. He was thereafter informed of this rule prohibiting flying on several different occasions. No aircraft was available for the use of any airport supervisor, the establishment of the traffic pattern being the duty of the director of secondary airports.

At approximately 8 a. m. on the day of the accident, Lange remarked to a fellow employee that he was going "upstairs" to check the pattern. However, since the statement was made in the office located 27 steps below ground level, its meaning, at best, is questionable. At 10:30 a. m. Lange and one Ronald Percy signed out a Tri-Champ aircraft owned by the Nelson-Ryan Flight Services, Inc., a flight school located at the airport. Percy was a flight instructor employed by this company. Shortly thereafter the plane crashed approximately 1,500 feet east of the Flying Cloud runway, which area was within the landing-approach pattern. Both occupants of the aircraft were killed.

The Industrial Commission, one member dissenting, affirmed the finding of the referee that the injury was not compensable.

■ The decedent's widow contends that since Lange's death occurred during his working hours in a place where he might reasonably be in connection with the performance of his duties, his death presumptively arose out of and in the course of his employment. It is frequently said that as used in the Workmen's Compensation Act the term "in the course of" refers to the time, place, and circumstances of the accident, whereas the term "arising out of" relates to the causal connection between the employment and the injury.[1] As applied in some factual situations, however, the two concepts are so closely interwoven that an attempt to adhere to technical distinctions serves little purpose. The instant case serves as an example. If Lange, at the time of the accident, was engaged in the work that he had been hired to perform, the injury not only occurred in the course of his employment but as a result of his employment. On the other hand, if Lange was pursuing a purely personal mission, then the injury neither occurred in the course of nor arose out of his employment.

The burden of proof rests upon the claimant.[2] Her evidence shows, among other things, that the accident occurred during the employee's working hours and that the aircraft in which he was riding or flying was within the traffic pattern of the airport. Having established this, the claimant contends that she is entitled to the benefit of a presumption that the accident occurred in the course of decedent's employment. We have frequently held that where the death of an employee results from an accident which occurred during his hours of work at a place where his duties required him to be or where he might properly have been in the performance of his duties, such evidence will not only sustain a finding that the accident occurred in the course of his employment,[3]

---

[1]Novack v. Montgomery Ward & Co. 158 Minn. 495, 498, 198 N. W. 290, 292; 21 Dunnell, Dig. (3 ed.) § 10403(5).

[2]Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. (2d) 8; Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121.

[3]Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. (2d) 888.

but will shift the burden of going forward with the evidence.[4] The rule is one of practical necessity in unwitnessed death cases where direct evidence of the purpose of the deceased's activity at the time of the accident is unavailable.

The employer, however, argues that this presumption does not arise in the instant case because the decedent was flying in violation of instructions to the contrary and hence was not at a place where he might properly be in the performance of his duties. The violation of an instruction or rule of the employer can sometimes take an employee out of the course of his employment.[5] In accordance with the vast majority of authorities, we have heretofore made a distinction between the performance of authorized acts in a prohibited manner and the performance of prohibited acts.[6] When the employee is engaged in the latter he is, according to the rule, acting outside the scope or sphere of employment and does not come within the protection of the statute. As used in this sense, however, the term "scope of employment" has no relation to its use in vicarious tort liability cases.[7] It simply means that if the employee is performing work which has been forbidden, as distinguished from doing his work in a forbidden manner, he is not acting in the course of his employment. As applied to the instant case, if Lange was in fact inspecting the adequacy of the warning devices from the air rather than the ground, he did not, by violating the prohibition against flying, take himself out of the course of his employment.

However the difficulty with claimant's position is that in order to find that the decedent was in a place where he might reasonably be in the

---

[4]Henry v. D. A. Odell Motor Car Co. 191 Minn. 92, 253 N. W. 110; Ohlsen v. J. G. Dill Co. 222 Minn. 10, 23 N. W. (2d) 15; Olson v. Eck's Homemade Sausage Co. 194 Minn. 458, 261 N. W. 3. The presumption also applies in establishing a causal connection between the injury and the employment. Beach v. American Steel & Wire Division, 248 Minn. 11, 78 N. W. (2d) 371.

[5]Rautio v. International Harvester Co. 180 Minn. 400, 231 N. W. 214; Anderson v. Russell Miller Milling Co. 196 Minn. 358, 267 N. W. 501.

[6]Prentice v. Twin City Wholesale Grocery, 202 Minn. 455, 278 N. W. 895; Tucker v. Newman, 217 Minn. 473, 14 N. W. (2d) 767.

[7]Riesenfeld-Maxwell, Modern Social Legislation, pp. 139, 234, 235.

performance of his duties, we must assume that he was serving the interests of his employer at the time. This assumption, of course, begs the question since it is the very thing that the claimant seeks to establish by the use of the presumption. The situation here is substantially different from that in Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. (2d) 888, and Henry v. D. A. Odell Motor Car Co. 191 Minn. 92, 253 N. W. 110, relied upon by the claimant. In the Chillstrom case the decedent, a salesman, was found close to death in his employer's truck at a place where he might ordinarily be expected to travel. Similarly, in the Henry case the deceased employee was an automobile salesman killed in an accident during his usual working hours at a place where he frequently traveled. In the instant case the accident occurred at a place where the decedent ordinarily would not be performing his duties.

Moreover, the evidence does not establish any factors which might reasonably justify the decedent's presence at the unusual and extraordinary place he was at at the time of the accident. While the effectiveness of the warning flags and other devices marking danger areas could perhaps be better determined from the air than on the ground, the testimony shows that there was no change in the condition of the flags or other markings on the day of the accident and that the decedent could adequately tell by a ground inspection how they would appear from the air. The construction of the new runway was not shown to be any different on the day of the accident than before, nor did the construction equipment constitute any obstruction to the operation of aircraft. There was no evidence of any emergency or violation of the traffic pattern.

While we are mindful of the policy according latitude to the claimant in proving her case, in our opinion the presumption referred to had no application in the instant case.

■ Even assuming that the burden of going forward with the evidence did shift to the employer, ample evidence was introduced to sustain the finding of the commission that the decedent was engaged in a personal mission at the time he met his death. Approximately one week prior to the accident, Lange made inquiry at the Nelson-Ryan

Flight Service about being "checked out" in a Tri-Champ aircraft, a procedure required by the flight service regardless of whether a pilot is licensed. On the day of the accident Lange signed out such an aircraft and took off with Percy, a flight instructor, with Lange occupying the forward cockpit, the one normally occupied by a person being checked out. This evidence, considered in light of all of the other circumstances involved, adequately supports an inference that, at the time of the accident, Lange was not engaged in the work for which he had been hired. It is well settled that the findings of the Industrial Commission will not be disturbed unless manifestly contrary to the evidence.[8]

The order of the commission is affirmed and the writ discharged. Affirmed.

---

[8]Sobczyk v. City of Duluth, 245 Minn. 569, 73 N. W. (2d) 795; Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797.