## MERLE SWENSON v. ELLEN ZACHER.

118 N. W. (2d) 786.

November 23, 1962—No. 38,680.

Orell Leen and Harry H. Peterson, for relator.
A. Paul Lommen, for respondent.

NELSON, JUSTICE.

Certiorari upon relation of Ellen Zacher, employer, to review a decision of the Industrial Commission in proceedings by Merle Swenson, employee, to obtain benefits under the Workmen's Compensation Act.

The referee awarded benefits to the employee after finding that the injury sustained arose out of and in the course of her employment, and the Industrial Commission affirmed.

Mrs. Zacher was operating a rooming and boarding home at 2504 Euclid Place, Minneapolis, during June 1959. Employee had been employed there for some years as a cook, preparing three meals a day for approximately 12 resident boarders. She normally worked 5½ days per week, with one hour off in the morning and two in the afternoon— from 2 to 4 p. m. She lived at the home and received board and lodging as a part of her wages. The employee testified that on the afternoon of June 19, 1959, she had stayed at the home during her free time and therefore returned to the kitchen about 3:15 to boil some ham for the evening meal. She said she began preparing for the evening meal earlier than usual because the ham needed additional time to cook properly. When she entered the kitchen, she heard a noise in the yard in the rear of the premises. Children had been damaging and taking articles from the yard, so employee had been told by her employer to investigate any noise there. She went out to

the back porch and then slipped and fell down the steps, sustaining a fracture of her right wrist. Mrs. Zacher, who was attending a meeting at the time, was called and took employee to a hospital.

Employer contends that the injury is not compensable under Minn. St. 176.011, subd. 16, which provides in part:

" 'Personal injury' means injury arising out of and in the course of employment * * *; but does not cover an employee except while engaged in, on, or about the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service."

She contends that the accident did not arise out of and in the course of employment and points to the testimony of a friend who stated that he had seen employee get up following a fall on a public street in the vicinity of employer's home about 3 o'clock that afternoon. This witness did not stop to assist employee but claimed that he recognized her from her profile. The witness had been a social visitor at the home on several occasions and had talked to employee, with whom he was acquainted. We agree with the commission that his testimony lacked persuasion in view of his failure to give her assistance under the circumstances.

Employer contends also that employee's injury did not arise out of and in the course of her employment because she was outside of the kitchen—on the back steps—when she fell, and because the accident did not occur during her usual working hours. Employee gave the following testimony before the referee:

"Q. Now, on this particular day, first about what time did you get hurt that day?

"A. About 3:15.

"Q. In the afternoon?

"A. Yes.

"Q. Now, what were you doing just before you were hurt?

"A. Well, I had started out in the kitchen and was going to put a ham bone on for supper, and I heard this noise out in the back.

"Q. * * * You went out in the kitchen to put a ham bone on?

"A. Yes, and I heard this noise out in the back, and I went to see what it was.

\* \* \* \* \*

"Q. Out by the kitchen?

"A. Yes, by the back porch.

"Q. Now, what had you—was there any background for your inquiring about this noise? Had anything been said about your employer?

"A. She had asked us if we heard any noise to see what it was.

"Q. Had there been any trouble out there before?

"A. Some kids hanging around out there.

"Q. So then you went out to investigate?

"A. Yes.

"Q. Well, then state what happened.

"A. Well, I started to step out the door, and I missed my footing and fell down five steps.

"Q. And landed where?

"A. On the cement at the bottom, and the sun was real bright.

"Q. Do I understand this sun had something to do with your accident?

"A. Well, the sun was shining right back that way.

"Q. Well, did it get in your eyes?

"A. Yes.

"Q. Did you hurt yourself when you fell?

"A. Yes.

"Q. What injury did you have?

"A. Compound fracture of the right wrist."

Employee's testimony clearly indicates that she was about the premises of her employer when the injury occurred and that she was in fact in the course of her employment even though she had a right to be off duty. She testified:

"Q. Now, then, you were free to either stay in the house or go somewheres else during the hours from two to four?

"A. Yes.

"Q. And you weren't obligated in any way to serve Mrs. Zacher during that time, is that correct?

"A. No.

"Q. You say you were putting a ham bone in the—

"A. I was putting a piece of ham on—I was going to put it on to boil for supper.

"Q. You could have put that on later, couldn't you?

"A. No, it takes ham longer than two hours to boil.

"Q. So you put that on during your off time when you weren't required to work?

"A. Yes, as long as I was there, I figured I would put it on so it would be done."

1. There was evidence in the instant case sufficient to sustain the findings of the commission that the accident occurred on the premises at the time and in the manner claimed by employee. It is well settled in this state that the findings of the Industrial Commission will prevail unless they are manifestly contrary to the evidence. Yureko v. Prospect Foundry Co. 262 Minn. 480, 115 N. W. (2d) 477; Smith v. Mason Brothers Co. 174 Minn. 94, 96, 218 N. W. 243, 244.

2. The only question remaining for determination is whether the injury was one "arising out of and in the course of employment." Our decisions hold that the term "arising out of," as used in the Workmen's Compensation Act, refers to the causal connection between the employment and the injury, whereas the term "in the course of" refers to the time, place, and circumstances of the accident causing the injury. Lange v. Minneapolis-St. Paul Metropolitan Airports Comm. 257 Minn. 54, 56, 99 N. W. (2d) 915, 917.

3-4. We have held that an injury arises out of the employment if it arises out of the nature, conditions, obligations, or incidents of the employment; in other words, out of the employment looked at in any of its aspects. Breimhorst v. Beckman, 227 Minn. 409, 35 N. W. (2d) 719; Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255; Caswell's Case, 305 Mass. 500, 26 N. E. (2d) 328.

In Nelson v. City of St. Paul, 249 Minn. 53, 81 N. W. (2d) 272, we said that if the injury has its origin with a hazard or risk connected

with the employment and flows therefrom as a natural incident of the exposure occasioned by the nature of the work, the requisite causal connection exists and the injury arises out of the employment.

In Olson v. Trinity Lodge, 226 Minn. 141, 144, 32 N. W. (2d) 255, 257, this court said:

"The phrase 'arising out of' the employment expresses the factor of origin, source, or contribution rather than cause in the sense of being proximate or direct. Compensation acts are sui generis, and care must be taken not to defeat their purpose by applying, through long judicial habit, concepts belonging to fundamentally different fields of litigation. Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 297 N. W. 19; Horovitz, Current Trends in Workmen's Compensation, pp. 509-511. The standard of origin or source as a contributing factor obviously goes far beyond the restrictive limitations of the tort concept of proximate cause."

As already noted, employee testified (and this testimony was evidently accepted by the referee and the commission) that she was about to put a ham bone on the stove when she heard a noise in the vicinity of the back porch. It appears to have been the express understanding of the parties that her duties were to be confined to cooking. Certainly putting a ham bone in the pot was an incident of cooking. Nevertheless it must have been tacitly understood that as an employee she owed a duty of loyalty to her employer to follow her instructions to investigate any commotion coming to her attention. Employee's awareness that there had been items missing prior to the time of the injury could justifiably have aroused her suspicions and caused her to investigate. The foregoing facts are sufficient to establish a causal connection between conditions which the employer made a part of the employment and the injury of the employee. See, Nelson v. City of St. Paul, *supra*. The requirement of causality is satisfied when, as here, the employee was injured in carrying out an obligation to the employer, the performance of which took her to the place of the accident.

This case does not present a situation where the injury was caused while employee was engaged in an activity relating entirely to per-

sonal matters or in satisfaction of her own interest or convenience. The commission as well as the referee could well find the required causal connection between the injury and the conditions existing at the time about employer's premises. Employee's presence on the porch at the time the accident occurred was an aspect of the employment and sufficiently related to her duties to satisfy the requirements of "arising out of" the employment.

5. Nor do we find difficulty in upholding the determination of the commission that the accident occurred in the course of employment.

In Sweet v. Kolosky, 259 Minn. 253, 254, 106 N. W. (2d) 908, 910, we said:

"This section [§ 176.011, subd. 16] should be given the liberal interpretation accorded workmen's compensation statutes. * * *

"* * * * '* * * It is not presence on the premises but continuation of the employment that is controlling in such cases.' "

Since employee lived and worked in the boarding home as she did and was injured while engaged in an activity reasonably related to her employment, the injury occurred "in the course of employment" even though the accident occurred during off hours. This court has heretofore recognized that the statutory limitation that accidental injury, to be compensable, must occur during the hours of service is to be given a reasonable and liberal construction. Nelson v. City of St. Paul, *supra.*

A somewhat similar factual situation was presented to the New York Court of Appeals in Matter of Giliotti v. Hoffman Catering Co. 246 N. Y. 279, 281, 158 N. E. 621, 56 A. L. R. 500, 501. The court pointed out in that case that the employee was engaged not as workmen often are, from day to day, but for a definite term. His status was practically that of a domestic servant; an implied part of the contract of employment of such an employee is to sleep on the premises. The claim arose out of the death of the employee due to suffocation by a fire in the building after the employee had retired to his room. The New York court found no difficulty in concluding that the injury in that case happened "during the period of his employment." The decision also held that the employment did not cease because the employee was off duty but that there was a "continuity" of employment.

In State Compensation Ins. Fund v. Industrial Acc. Comm. 194 Cal. 28, 227 P. 168, the California court had before it a situation where a hotel maid sustained an injury while leaving the hotel on her day off. The injury was held compensable on the theory that while she was not required in the first place to live at the hotel, but voluntarily chose to do so under an employment contract allowing her board and room, she thereafter had no choice under her contract and was as much in the course of her employment when she was collecting a portion of her wages by living at the hotel as when she was performing her duties. The reasoning of the California court is persuasive and clearly indicates why the commission in the instant case was reasonably justified in holding that at the time employee sustained the injury she was "in the course of employment" within the meaning of § 176.011, subd. 16.

We have carefully examined the cases cited by employer in support of her position but find them readily distinguishable. Stepan v. J. C. Campbell Co. 228 Minn. 74, 36 N. W. (2d) 401, cited as apposite and controlling, was also a case in which employees were provided lodging by their employers, but all similarity between that case and this one ends there. We have held that employee here was engaged in an aspect of her employment when she sustained her injury. That clearly was not so in the Stepan case. There, employee undertook to assist a fellow workman in putting a ceiling in a temporary shack furnished by the employer for the fellow workman. The evidence established that neither the foreman nor any other superior had directed the employee to assist the fellow workman and that the work was performed outside regular hours of employment. The finding of the Industrial Commission that the injuries sustained by employee while so engaged did not arise out of or in the course of his employment was sustained by this court. The Stepan case is not controlling here because there the injury did not arise out of the nature, conditions, obligations, or incidents of the employment.

It is patent that in the instant case employee's purpose in being in the kitchen and going out on the porch where the injury occurred was solely in the interest of her employer. In 1 Larson, Workmen's Com-

pensation Law, § 27, the author states the following general rule, which appears to be applicable to the facts in this case:

"An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment."

6. The general rule that findings of the Industrial Commission on appeal should not be disturbed unless clearly erroneous was set forth in Torrey v. Midland Co-ops. Inc. 253 Minn. 489, 492, 93 N. W. (2d) 135, 137, as follows:

"* * * it is the function of this court upon appeal from a decision of the Industrial Commission to determine whether the evidence is such that the commission might reasonably have come to the conclusion which it did. If so, the findings will not be disturbed unless they are manifestly contrary to the evidence or unless consideration of the evidence and inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion."

The order of the Industrial Commission is affirmed.

Respondent is allowed $250 attorney's fees and costs in this court. Affirmed.