# GLORY ANN BONFIG v. MEGARRY BROTHERS, INC., AND ANOTHER.

199 N. W. 2d 796.

July 21, 1972—No. 42967.

*Mordaunt, Walstad, Cousineau & McGuire, Robert J. McGuire, Meyer & Meyer,* and *Mark H. Meyer,* for relator.

*Wayne R. Johnson,* for respondents.

Heard before Knutson, C. J., and Murphy, Peterson, and Mason, JJ.

PETERSON, JUSTICE.

Relator, the widow of Sylvester Bonfig, deceased employee of respondent Megarry Brothers, Inc., who sustained fatal injuries while driving the employer's motor vehicle during his off-duty hours, contests the decision of the Workmen's Compensation Commission denying compensation on the ground that decedent's death did not arise out of or in the course of his employment. We affirm.

The factual situation out of which the issues arise is not complicated. Decedent employee resided with his wife at Freeport, Minnesota. Megarry Brothers, his employer, was engaged in a highway construction project near Grand Marais, Minnesota, and decedent was employed on the project as truck foreman. The employer afforded him an allowance for food and motel lodging at Grand Marais. Decedent, who worked the normal day shift at the project site, was provided with a truck for the performance of his duties, and he was permitted to use the truck for personal use in his off hours, including travel to and from the motel on work days and to and from his permanent residence, if he wished, on weekends. He was, in addition, provided with a company credit card for purchasing gasoline for the truck.

Decedent suffered a fatal injury, apparently while driving to his motel following a dinner sponsored by respondent-employer. Megarry's project superintendent had sold some excess paving material that otherwise would have been discarded, so the proceeds were used to sponsor a free dinner. All project employees, together with some state and municipal employees, were invited to attend. Not all employees attended, for attendance was voluntary. It was a simple social event, without talks or any activity incident to Megarry's business. The dinner ended at about 9 p. m., and, after stopping at other places of entertainment until about 12:30 a. m., decedent apparently drove in the direction of

his motel. He later was found dead in his truck, which had been driven into a ditch.

Relator's claim is broadly premised on the provisions of Minn. St. 176.011, subd. 16, relating to furnished transportation:

" 'Personal injury' means injury arising out of and in the course of employment and includes personal injury caused by occupational disease; but does not cover an employee except while engaged in, on, or about the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service. *Where the employer regularly furnished transportation to his employees to and from the place of employment such employees are subject to this chapter while being so transported * * *.*" (Italics supplied.)

The commission decided the issue on the finding that at the time of the motor vehicle accident decedent was not being transported "to and from the place of employment." A mixed question of law and fact is presented in this context.

■ The threshold issue, expressed broadly in relator's claim and implied in the more narrow ground upon which the commission decided it, is whether, by the italicized provision of § 176.011, subd. 16, an employee is covered by the Workmen's Compensation Act merely because he is permissively and for his own personal convenience driving an employer-furnished vehicle away from the employer's premises and outside his normal hours of work. We hold, both from the language and the history of this enactment, that it was directed to the distinct situation in which the employer regularly furnished transportation to his employees as passengers in vehicles driven under the direction and control of the employer, pursuant to an understanding or agreement, expressed or implied, that "being so transported" was a condition of the employment relationship.

The legislature's use of the passive verb form, "being so transported," standing alone, militates against providing coverage in the more common situation where the employee is the active

driver of an employer-owned vehicle, as a permissive use for his own convenience and not that of the employer. It is well settled, as a general rule, that an injury to an employee in going to or returning from the employer's premises where his work duties are performed does not arise out of and in the course of his employment so as to provide coverage under the act. This was the rule prior to the enactment of the statute, Podgorski v. Kerwin, 144 Minn. 313, 175 N. W. 694 (1919), and, more pertinently, subsequent to its enactment. Cavilla v. Northern States Power Co. 213 Minn. 331, 336, 6 N. W. 2d 812, 815 (1942); Youngberg v. The Donlin Co. 264 Minn. 421, 423, 119 N. W. 2d 746, 748 (1963). As the court stated in Rosvall v. City of Duluth, 177 Minn. 197, 199, 224 N. W. 840, 841 (1929), there is no perceptible legislative purpose in discriminating between two employees injured en route to or from work on their own time merely because the one was driving his own motor vehicle and the other was driving his employer's.

The history of the italicized portion of § 176.011, subd. 16, compels this construction of its language. In Nesbitt v. Twin City Forge & Foundry Co. 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165 (1920), a personal injury action, this court sustained a verdict in favor of an employee who had been injured while being transported in the employer's truck from the streetcar terminal point to the employer's premises, notwithstanding the fact that the employer, by the employment contract, was obligated to furnish such transportation regularly. The court held that the terms of the statute excluded the plaintiff from the operation of the compensation act, thereby permitting recovery in the personal injury action. Although so deciding on the authority of its prior decisions, the court expressly invited legislative consideration of the matter for "the attention it merits." 145 Minn. 291, 177 N. W. 133, 10 A. L. R. 169. The legislature responded to that invitation by L. 1923, c. 300, § 14, using the language specifically directed at the Nesbitt situation. This court in several cases, in each of which it acknowledged the enactment

as a specific response to the Nesbitt situation, has applied the statute as authorizing compensation for injuries sustained by an employee to whom the employer regularly has furnished transportation as a passenger to and from home and work as an express or implied term of the employment contract. Wiest v. Bolduc, 178 Minn. 310, 227 N. W. 48 (1929) ; Markoff v. Emeralite Surfacing Products Co. 190 Minn. 555, 252 N. W. 439 (1934); Radermacher v. St. Paul City Ry. Co. 214 Minn. 427, 8 N. W. 2d 466, 145 A. L. R. 1027 (1943); Gehrke v. Weiss, 204 Minn. 445, 284 N. W. 434 (1939). The court has, at the same time, denied coverage where an off-duty employee, even though being transported from the work premises to his home in an employer-owned motor vehicle, was being so transported merely for his own personal convenience, as a permissive use and not as a matter of right under the contract of employment. Cavilla v. Northern States Power Co. 213 Minn. 331, 341, 6 N. W. 2d 812, 817 (dictum); Hardware Mutual Cas. Co. v. Ozmun, 217 Minn. 280, 14 N. W. 2d 351 (1944). And, as this court held in Ozmun, the burden of proving the fact that transportation was regularly furnished as a condition of employment is upon the employee.

The situation to which the italicized provision of § 176.011, subd. 16, applies is, of course, wholly distinguishable from the situation in which an employee, such as a traveling salesman, is covered by the statute while driving or being driven in an employer-owned motor vehicle in the actual performance of services for his employer. The employee in such situation is compensated, not because of the furnished-transportation provision, but because he is constructively on or about "the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service." This distinction, together with the narrow scope of the furnished-transportation provision, was carefully articulated in Cavilla v. Northern States Power Co. *supra.*

The Cavilla case is instructive for the instant case, as well as for a corollary case filed herewith, Funk v. A. F. Scheppmann

& Son .Const. Co. 294 Minn. 483, 199 N. W. 2d 791, notwithstanding the factual difference that the injury-producing event in Cavilla did not involve an employer-furnished motor vehicle. There, the deceased employee, Cavilla, a resident of the Twin Cities area, was employed under a union contract by Northern States .Power Company, headquartered in Minneapolis and, as a member of a crew of similarly situated employees, was sent by the employer for an extended period of time to Tracy, Minnesota, to work on a construction project. The employees were paid a subsistence and expense allowance on a 7-day-week basis but worked a stated Monday-to-Friday normal work week. They were permitted to return to their homes in off-duty times, but the employer had no contractual duty to furnish them with transportation at any times other than at the commencement and conclusion of the project. Cavilla was being driven by another employee, in the latter's motor vehicle, on a weekend trip to Minneapolis, but en- route they became involved in a collision and Cavilla was fatally injured. The commission awarded compensation to Cavilla's widow, based upon a finding that the deceased was a traveling employee whose employment included weekend trips as an incident of the employment relationship, from which the commission determined his death arose out of and in the course of such employment. This court reversed.

The Cavilla reversal was premised, at the outset, upon the holding that the employer's statutory obligation must be determined under the primary provisions of Minn. St. 1941, § 176.01, subd. 11, (now § 176.011, subd. 16) and without reference to the italicized furnished-transportation provision. With respect to the latter provision, the court said (213 Minn. 342, 6 N. W. 2d 818):

"* * * In Nesbitt v. Twin City F. & F. Co. * * * *supra*, it was held that where the contract required the employer to furnish the transportation, but the employes were not required or directed to use it in going to and from work, an accidental injury occurring to an employe while being transported to work was

not covered by the workmen's compensation act. The act was amended by the proviso in question to enlarge the employer's liability in the single instance where he *regularly* furnishes such transportation. Otherwise, the rule as it was prior to the adoption of the proviso still remains unaffected and in force. * * * By changing the rule only in the respect covered by the proviso, the legislature by plain implication approved and adopted the rule except as it modified it by adding the proviso."

The factual determination was accordingly to be based upon the usual considerations of whether the injurious event occurred while the employee was serving his employer as a workman and whether there was a causal connection between the employment and the injury. Addressing the commission's concept of a traveling employee, the court observed that "[t]he same rules are applicable to traveling as to other employes, but with different result, compelled by the fact that in such cases the travel is in performance of the employe's duty" since "[a] traveling employe is considered as carrying his working premises with him while engaged in the employer's service * * * and his usual working hours are considered as those during which he is prosecuting his master's business." 213 Minn. 337, 6 N. W. 2d 815. The court concluded that Cavilla's accidental death did not arise out of his employment because it occurred at a place other than the premises where his service was being performed or where his service required his presence as a part of such service and that it did not arise in the course of the employment because it did not occur during his hours of service, noting (213 Minn. 338, 6 N. W. 2d 816) :

"* * * The undisputed evidence is that the place of employment was the employer's substation at Tracy; that the time of service was specified as certain hours each day from Monday through Friday * * * and that, except at such place and during such hours, the time was that of the employes to spend as they saw fit. * * * The accidental death occurred at a point approximately 115 miles from the employer's substation, the place where

the services of the workman were required to be performed, and several hours after the time for the rendition of his services as such employe. At the time, the employe was not engaged in performing any service to the employer, but was engaged exclusively in purposes of his own, entirely commendable and praiseworthy, that of returning to his home to be with his family. Where, as here, an employe's services are required to be performed away from home at a specified place and during specified hours, *an accidental injury occurring to the employe while engaged on a week-end trip to his home after completion of the week's work and while he is not performing a service by direction of his employer, does not arise out of and in the course of the employment.* * * *

\* \* \* \* \*

"The fact that the employer knows that the employe is in the habit of departing from his work for his home after work does not make the homeward trip an incident of the employment. *This is true even where the employe uses a vehicle of the employer for transportation on such trips.*" (Italics supplied.)

■ An employee injured while driving an employer-owned motor vehicle, like an employee driving his own motor vehicle, has the burden of proving that he was at the time engaged in the performance of his regular duties or, if not, that he was performing emergency work or a special errand for his employer. Cavilla v. Northern States Power Co. *supra;* Villebrun v. Fryrear, 288 Minn. 478, 183 N. W. 2d 279 (1970); Johnson v. Range Blacktop Co. Inc. 278 Minn. 288, 153 N. W. 2d 823 (1967); Youngberg v. The Donlin Co. *supra.* The existence of these conditions was not only unproved but was affirmatively disproved. The commission, adopting the findings and determination of the compensation judge, found that the employee was using the employer's motor vehicle for his own convenience and not on a special errand for the employer.

Relator's reliance on the traveling salesmen cases, such as

Johnson v. Crane Co. of Minnesota, 210 Minn. 519, 299 N. W. 19 (1941), for reasons stated in Cavilla v. Northern States Power Co. *supra,* is clearly misplaced. The employee there was, to be sure, traveling in a motor vehicle furnished by the employer but, as the court expressly noted, the motor vehicle was furnished the employee to enable him to perform his duties as a traveling salesman. There was no dispute in the evidence that the employee's usual hours of employment were those during which he was prosecuting his employer's business, that he was traveling in a motor vehicle furnished by the employer for travel to the premises of customers, and that on the night of the injury-producing accident he was returning from such business engagement. Johnson is notably distinguishable from Gumbrill v. General Motors Corp. 216 Minn. 351, 13 N. W. 2d 16 (1944), where compensation was denied to the traveling employee who, although injured while being transported in his assigned territory, was at the time traveling merely to a social dinner not directly related to his employment. As in Ethen v. Franklin Mfg. Co. 286 Minn. 371, 176 N. W. 2d 72 (1970), decedent Bonfig's voluntary attendance at the social dinner in his nonduty hours did not clothe him with the protection of the Workmen's Compensation Act.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.