## MARLENE EPP v. MIDWESTERN MACHINERY COMPANY AND ANOTHER.

208 N. W. 2d 87.

May 18, 1973—No. 43707.

*Raymond W. Fitch,* for relators.

*Sahr, Kunert, Tambornino & Soshnik* and *John L. Tambornino,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and MacLaughlin, JJ.

PER CURIAM.

Relators, by writ of certiorari, challenge a decision by the

Workmen's Compensation Commission awarding death benefits to dependents of a deceased employee, John Epp, an over-the-road truckdriver employed by Midwestern Machinery Company, whose death resulted from his being struck by an automobile while he was walking across a highway during a weekend layover. Because we agree with the commission's determination that the employee's accidental death "arose out of and in the course of his employment," we affirm.

At the time of the accident, the employer was engaged in the business of transporting machinery from all parts of this country and Canada to warehouses it owned until such machinery could be sold and delivered to employer's customers. All transportation carried on by the employer was accomplished by two trucks it owned and operated. Due to the interstate nature of the trips, drivers of employer's two trucks were required to work 8 hours, rest 8 hours, and then resume 8 hours of work. Depending upon the availability of a load to be picked up, the drivers conceivably could have been working any hour of any day during the week.

Employee, driving one of employer's trucks, left Minneapolis on May 19, 1969, bound for Newark, New Jersey, and other points in the East. On May 22 he picked up a shipment of machinery in Philadelphia and then, in accordance with instructions from employer, continued on to Mechanicsburg, Pennsylvania, to make another pickup. Employee arrived in Mechanicsburg on Friday, May 23, 1969, and was told upon arrival that he would be unable to take the machinery as the money required for its payment, although wired by the employer, had not yet reached the seller. Employee then telephoned his employer and was instructed to wait to see if the machinery could be released on the following day. The record also indicates that employee was informed by employer that if such release could not be obtained on Saturday, May 24, 1969, he was "to wait over until Monday" or "stay there" until the load was released.

It is the employer's general policy during such layovers to pay

for the expenses incurred. C. J. O'Heron, one of the two owners of Midwestern Machinery Company, testified:

"We pay the motel bill, we pay the food bill, and oftentimes pay for a beer or a drink or whatever he has with his meals, and so forth. * * * We even wire him money if he has to stay over and hasn't enough petty cash in its pocket to pay."

The employee was unable to gain release of the machinery on Saturday and thus secured lodging for the weekend. Although the record is silent regarding the precise details surrounding employee's death, it is clear that he was killed on May 25, 1969, at approximately 2:30 a.m. when he was struck by an automobile while crossing the highway, apparently on return to his motel.

The commission reversed the compensation judge's determination that the death did not arise in the course of employment, and it awarded benefits to the dependents of the deceased employee.

The Workmen's Compensation Act, which provides benefits for an employee's death "arising out of and in the course of employment," Minn. St. 176.021, subd. 1, is a highly remedial statute and should not be construed so as to deny benefits unless it clearly appears that the conduct which results in death does not come within the protection of the act. Sandmeyer v. City of Bemidji, 281 Minn. 217, 161 N. W. 2d 318 (1968); Jonas v. Lillyblad, 272 Minn. 299, 137 N. W. 2d 370 (1965).

In Snyder v. General Paper Corp. 277 Minn. 376, 152 N. W. 2d 743 (1967), this court discussed at length its previous decisions regarding the protective scope of the term "arising out of and in the course of employment" as used in § 176.021, subd. 1. Emphasizing what we had earlier declared, we said (277 Minn. 378, 152 N. W. 2d 745):

"* * * [I]f the injury has its origin with a hazard or risk connected with the employment and flows therefrom as a natural incident of the exposure occasioned by the nature of the work, the requisite causal connection exists and the injury arises out

of the employment. * * * [T]he phrase 'in the course of' the employment refers to factors of time and place and means that an injury to be compensable must arise within the time and space boundaries of the employment."

Relators primarily argue that the employee's accidental death did not arise out of a contemplated hazard or risk connected with his employment. The record is clear, however, that layovers, although frequent, were not usually as prolonged as the instant one, and that the employee admittedly was neither required nor expected to spend the entire duration of a layover in his motel room. The employer confirmed that its policy was to reimburse employee for all expenses of lodging, food, and drinks incurred while traveling on employer's behalf. From our reading of the record, however, we are convinced it was not established that the purchase of such food or refreshment was limited to purchases made at or near mealtime.

Where, as here, an employee is directed by his employer to remain at a certain locale on behalf of the employer for a specified time or until instructed otherwise, "the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment." Robards v. New York Division Electric Products, Inc. 33 App. Div. 2d 1067, 307 N. Y. S. 2d 599, 600 (1970).[1] The commission surmised that employee "to pass some time—during a considerably long waiting period—crossed the road to the tavern and had some drinks until closing time." The record, therefore, is sufficient to support the conclusion that the employer contemplated, because of the work schedule of the employee, that

[1] In accord, see 1 Larson, The Law of Workmen's Compensation, § 25.21, where the following is found: "So when a traveling man slips in the street or is struck by an automobile between his hotel and a restaurant, the injury has been held compensable, even though the accident occurred on a Sunday evening, or involved an extended trip occasioned by employee's wish to eat at a particular restaurant."

he would be exposed to the hazards of being upon a highway at any hour of the day or night, either driving his truck or having to cross it for meals, refreshments, or to return to his motel room. Accordingly, we cannot say that employee's activity was unreasonable and that the risk to which he was exposed did not directly flow as a natural incident of his employment under the circumstances of this case.

Affirmed.

PETERSON, JUSTICE (concurring specially).

This case is at best a marginal one, decision of which turns on its unique facts. It is, in a sense, similar to Snyder v. General Paper Corp. 277 Minn. 376, 152 N. W. 2d 743 (1967), where the divided court's decision was tipped in favor of the deceased employee's dependent widow by a concurring opinion which turned on the particular "environment of the occasion" (277 Minn. 388, 152 N. W. 2d 751).

The facts surrounding the fatal accident are sketchy. Decedent apparently was returning to his motel from the Bar-B-Q Tavern, located in the immediate vicinity of the motel. He had consumed alcoholic beverages, but the commission correctly pointed out that there was no proof that he was intoxicated. Although the commission made no finding on the matter, decedent may have consumed a meal at the same time.[1] The important fact, to me, is that the employee's activity—at the employer's expense—was authorized. The employer himself testified:

"We pay the motel bill, we pay the food bill, and oftentimes *pay for a beer or a drink or whatever he has with his meals, and so forth.*" (Italics supplied.)

I think the commission could conclude, in this unusual situation, that the employee's accidental death arose out of a contem-

---

[1] Decedent did not work what for most people would be a normal work schedule. Working in cycles of 8 hours on and 8 hours off, it is understandable that his mealtimes would not necessarily coincide with what for most people would be a "normal" schedule for mealtime.

plated hazard connected with his employment, and on that narrow basis I concur in the result.