Paul C. VOIGHT, Relator,

v.

RETTINGER TRANSPORTATION, INC., et al., Respondents,

and

Hennepin County Welfare Department, Relator.

No. 51373.

Supreme Court of Minnesota.

June 5, 1981.

Abrams & Spector and John Horvei, Minneapolis, for Voight.

Thomas L. Johnson, County Atty., Minneapolis, for Hennepin County Welfare Dept.

Chadwick, Johnson & Bridell and John R. Bridell, Minneapolis, for respondents.

AMDAHL, Justice.

This case is before the Court upon a writ of certiorari to review a decision of a divided Workers' Compensation Court of Appeals reversing the compensation judge's award of benefits to an injured employee. The court of appeals held that the employee's injuries did not arise out of his employment. We reverse that determination and remand this matter to the court of appeals with directions to reinstate the findings and award of the compensation judge.[1]

The material facts giving rise to this controversy are not in dispute. Employee Voight was hired by Rettinger Transportation, Inc. to drive a school bus in the Orono School District on a set route during fixed hours of work. When he began his employment, the employee was informed that occasionally he would be given the opportunity to make additional income on special charter trips.

On November 7, 1975 at the employer's request, the employee agreed to make a weekend charter run to Camp Castaway located approximately 220 miles north of

---

1. In the court of appeals, the employer argued that it was not liable for payment of workers' compensation benefits because the injury was not work-related. The amount of benefits due the employee if the injury was compensable was not argued before the court of appeals and is not at issue here.

the Twin Cities. The employee received a flat rate of $75.00 and was told that meals and lodging would be provided at the camp over the weekend. Three other drivers, Don Oestreich, Gerald Ross and Steven Alger also drove buses to Camp Castaway on the weekend of November 7th.

On these weekend charters, drivers were to transport campers to Camp Castaway on Friday evening, sweep out and refuel the buses on Saturday morning at Detroit Lakes, located approximately 14 miles from the camp, and make the return trip on Sunday at noon. Refueling the buses on Saturday typically took only two hours and drivers had considerable free time to do as they wished. It was customary for drivers to go to Detroit Lakes for dinner, drinks, shopping or a movie on lay-over time. The employer was aware that drivers often went into town for meals or recreation and acquiesced in the practice. Drivers, however, were not reimbursed for any expenses they incurred.

On Saturday, November 8, 1975, after servicing the buses and returning to camp, the four drivers agreed to go into town for dinner instead of eating at the camp. Because the employer prohibited the drivers from taking buses into town other than for refueling, Oestreich arranged to borrow a vehicle. The four drivers proceeded to Erie Junior's Bar and Restaurant located three miles from Detroit Lakes, arriving at approximately 6:00 p. m.

After drinks and dinner, Ross and Oestreich decided to go to a movie. Alger and the employee chose to stay at the bar and the other drivers agreed to meet them there after the movie at approximately 11:00 or 12:00 p. m. to give them a ride back to the camp.

At the bar, Alger and the employee met Senn and Boyer who were deer hunting in the area. After some discussion, Senn and Boyer agreed to give the two drivers a ride to the Broken Wheel, a bar and restaurant located approximately three miles from Erie Junior's, where there was a live band.

The two drivers stayed at the Broken Wheel for approximately two hours and had some drinks. Alger solicited a ride from Boyer and Senn at approximately 10:30 p. m. to go back to Erie Junior's to meet Oestreich and Ross. By that time, the bartender had refused to serve Boyer any more drinks. Boyer, Senn and Alger proceeded to Senn's automobile in the parking lot and noticed that the employee was not with them. Alger and Senn went back to the bar, and informed employee that they were ready to leave. Boyer had remained in the car on the passenger side of the front seat. As the employee approached the right rear door of the automobile and was about to enter, Boyer leaned out the door and began firing a pistol in an attempt to generate some excitement and inadvertently shot the employee.

It is undisputed that the shooting was not motivated by a dispute or any personal animosity between the two men. The evidence clearly supports the court of appeals' finding that the shooting was accidental. Additionally, the record is devoid of evidence indicating that the employee was intoxicated at the time that he was injured.

The employee testified that, but for the charter trip to Camp Castaway, he would not have been at Erie Junior's or the Broken Wheel on the night he was shot. As a result of the gunshot wound, the employee has been rendered a quadriplegic.

The compensation judge found that at the time of the accident, the employee was pursuing the usual and reasonable interests of a driver his age on lay-over time, that the assault was not motivated by personal reasons and that the injury sustained was inherent in his employment. Concluding that the injury arose out of and in the course of his employment, the compensation judge awarded the employee compensation for permanent partial and permanent total disability. A divided court of appeals reversed [2] and this appeal ensued.

2. The Hennepin County Welfare Department intervened to assert its claim for reimbursement of medical expenses paid on behalf of the employee. Because the court of appeals found

Two issues are presented on appeal: (1) whether compensation is barred in the instant case by virtue of the exclusionary clause contained in Minn.Stat. § 176.011, subd. 16 (1980), and (2) whether employee's injury arose out of and in the course of his employment.

## I. ASSAULTS BY THIRD PERSONS

■ Minn.Stat. § 176.011, subd. 16 (1980) excludes personal injury:

caused by the act of a third person or fellow employee *intended to injure the employee because of reasons personal to him,* and not directed against him as an employee, or because of his employment.

(Emphasis added). The court of appeals cited a number of cases in which compensation was denied based upon the above exclusionary clause. Those cases, however, involved situations in which the third person or fellow employee intended to injure the employee and the motivation was purely personal to the employee and not related to his employment. *DuFloth v. City of Monticello,* 308 Minn. 451, 241 N.W.2d 645 (1976); *Jones v. Schiek's Cafe,* 277 Minn. 273, 152 N.W.2d 356 (1967) (injury sustained by claimant in an attack upon the fellow employee held not to have arisen out of unusual pressures inherent in the nature of working relationship); *Lareau v. E. L. Murphy Trucking Co.,* 29 Minn. Workers' Comp. Dec. 395 (1977) (claimant intentionally shot by third person following altercation in restaurant denied compensation).

The evidence in the instant case is undisputed that the shooting was inadvertent and not motivated by personal animosity between Boyer and the employee. Therefore, as correctly noted by the dissenting court of appeals judge, the above-cited cases are inapposite and the provision contained in Minn.Stat. § 176.011, subd. 16 (1980) is inapplicable to this case.[3]

## II. THE "ARISING OUT OF" AND "IN THE COURSE OF" REQUIREMENT

■ As a condition precedent to recovery under the Minnesota Workers' Compensation Act, §§ 176.011–.82 (1980), an employee has the burden of showing that an injury arose out of and in the course of his employment.[4] *MacNamara v. Jennie H. Boyd Trust,* 287 Minn. 163, 166, 177 N.W.2d 398, 400 (1970); *Ulve v. Bemidji Cooperative Creamery Association,* 267 Minn. 412, 419, 127 N.W.2d 147, 152 (1964). The phrase "arising out of" refers to the causal connection between the employment and the injury whereas the phrase "in the course of" refers to time, place and circumstances of the accident. *Swenson v. Zacher,* 264 Minn. 203, 118 N.W.2d 786 (1963); *Lange v. Minneapolis-St. Paul Metropolitan Airports Commission,* 257 Minn. 54, 56, 99 N.W.2d 915, 917 (1959). Bradt, *An Examination of the "Arising Out of" and "In the Course of" Requirements Under the Minnesota Workers' Compensation Law,* 6 Wm. Mitchell L.Rev. 533, 618 (1980).

■ The "arising out of" and "in the course of" requirements have been liberally applied in traveling employee cases. The general rule is that an employee whose work entails travel away from the employer's premises is, in most circumstances, under continuous workers' compensation coverage from the time he leaves home until he returns. *Snyder v. General Paper Corp.,* 277 Minn. 376, 379, 152 N.W.2d 743, 746 (1967); 1A A. Larson, *The Law of Workmen's Compensation* § 25.00 (1979). A bus driver who is required to be away from

---

that the employee's injury was not work-related, the Welfare Department was not entitled to reimbursement for medical costs it paid on the employee's behalf.

**3.** *See State ex rel. Anseth v. District Court,* 134 Minn. 16, 158 N.W. 713 (1916) (bartender awarded compensation when struck by glass thrown by patron who was so drunk he did not know the nature of his act and no personal altercation preceded injury).

**4.** Minn.Stat. § 176.021, subd. 1 (1980) provides in part:

Except as excluded by this chapter * * * [e]very * * * employer is liable * * * to pay compensation in every case of personal injury or death of his employee arising out of and in the course of employment without regard to the question of negligence * * *.

Personal injury is defined in Minn.Stat. § 176.011, subd. 16 (1980) as "injury arising out of and in the course of employment * * *."

home overnight is in a position substantially analogous to that of a traveling salesperson and therefore comes within the general rule of continuous coverage.

The employer argues that the injury in question is noncompensable because the employee deviated from his employment for personal reasons at the time he was injured. Because the employee's trip to the Broken Wheel was for personal recreation rather than for business purposes, it is argued that he was not in the course of his employment and consequently he is not entitled to benefits under the Workers' Compensation Act.

The employer's arguments must be considered in light of the rule enunciated in *Epp v. Midwestern Machinery Co.*, 296 Minn. 231, 208 N.W.2d 87 (1973). In *Epp*, an over-the-road truckdriver was required to lay-over at a specific location due to a late shipment. The driver was killed while crossing a highway from a tavern to his hotel at approximately 2:00 a. m. In upholding an award of compensation, we stated:

> Where * * * an employee is directed by his employer to remain at a certain locale on behalf of the employer for a specified time or until directed otherwise, "the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment."

*Id.* at 234, 208 N.W.2d at 89 (emphasis in original). We held there that passing time at a tavern under the circumstances of the case was not an unreasonable activity.

The rule of portal to portal coverage in traveling employee situations when such an employee is engaged in a reasonable activity has been extensively applied by other courts. In *Schneider v. United Whelan Drug Stores*, 284 A.D. 1072, 135 N.Y.S.2d 875 (3rd Dep't 1954), an employee on a domestic trip drowned in a boating accident in the intervening hours before his return flight. In reversing a denial of compensation to employee's widow, the court noted that there are:

> many recent decisions to the effect that when an employee is required to travel to a distant place on the business of his employer and is directed to remain at that place for a specified length of time, his status as an employee continues during the entire trip, and any injury occurring during such period is compensable, so long as the employee at the time of the injury was engaged in a reasonable activity.

*Id.* at 1072–1073, 135 N.Y.S.2d at 876. The act of boating was held to be a reasonable activity and not unduly hazardous, thus justifying coverage for the death sustained therefrom. *See also Osterberg v. Columbia University*, 56 A.D.2d 675, 391 N.Y.S.2d 477 (3rd Dep't 1977).

Under similar facts, traveling employees have been awarded compensation for injuries sustained while engaged in relaxation or personal recreation after working hours.[5] *Robards v. New York Division Electric Products, Inc.*, 33 A.D.2d 1067, 307 N.Y.S.2d 599 (3rd Dep't 1970), involved employees

---

**5.** *See* 1A A. Larson, *The Law of Workmen's Compensation* § 25.23 (1979) and cases cited therein. *See e. g. Wright v. Industrial Comm'n*, 62 Ill.2d 65, 338 N.E.2d 379 (1975) (whether out-of-town employee was returning from business errand or recreational activity not determinative so long as conduct was reasonable when death occurred); *David Wexler & Co. v. Industrial Comm'n*, 52 Ill.2d 506, 288 N.E.2d 420 (1972) (traveling sales representative even if engaged in private recreation is covered by Workers' Compensation Act); *Cavalcante v. Lockheed Electronics Co.*, 85 N.J.Super. 320, 204 A.2d 621 (1964) *aff'd* 90 N.J.Super. 243, 217 A.2d 140 (1966) (reasonable for a worker who had been putting in long and odd hours some

150 miles from home to seek relaxation at dance hall); *Ahart v. Preload Co.*, 57 A.D.2d 976, 394 N.Y.S.2d 104 (3rd Dep't 1977); *Young v. Henry M. Young, Inc.*, 56 A.D.2d 941, 392 N.Y.S.2d 502 (3rd Dep't 1977) (when employment takes employee far from home, excursions to nearby places are expected and accident under such circumstances is compensable); *Mohan v. State*, 46 A.D.2d 717, 360 N.Y. S.2d 298 (3rd Dep't 1974) (even if deceased was out for a night of relaxation, wife was entitled to workers compensation benefits as decedent was traveling on state business requiring his absence from home for two or three days and there was no showing of any unreasonable activity on his part).

who were directed by their employer to remain at a certain locale for business purposes. Following dinner at a restaurant, the employees proceeded to a bar where they drank beer and played pool. They were injured at approximately 11:30 p. m. in a car accident while traveling back to the motel. The court upheld an award of compensation stating:

> Considering the relatively early hour at which the accident took place, the lack of evidence of intoxication, the fact that Lyons and Robards were returning to their motel when the accident occurred, and the fact they were within a reasonable distance from the place where they were required to work, we agree with the board's finding that the employees were "indulged in reasonable activity which could be considered an incident of the employment."

*Id.* at 1068, 307 N.Y.S.2d at 601.

■ An employee who is required to be out-of-town overnight has no choice but to eat, sleep and conduct all his activities away from home. Just as injuries sustained as a consequence of the necessity of sleeping in hotels, *Stansberry v. Monitor Stove Co.,* 150 Minn. 1, 183 N.W. 977 (1921), or traveling between a restaurant and a hotel, *Epp,* are compensable, we are of the view that an employee does not leave the course of his employment while engaging in reasonable relaxation or recreational activities after

working hours.[6] Reasonable activities are those which may normally be expected of a traveling employee as opposed to those which are clearly unanticipated, unforeseeable and extraordinary.[7] In so holding, we note that traveling employees have a *sui generis* status since their work necessarily requires that they be away from home. They have consistently been afforded broad protection under our Workers' Compensation Act.

■ In the case at bar, we reject the employer's argument that the employee's activity constituted a deviation from employment. The employee's trip to the Broken Wheel for recreational purposes was a reasonable activity and therefore incident to the employment relationship. Although the majority opinion of the court of appeals did not address this issue, the evidence is insufficient to support a contrary conclusion. We note that in the case, the record is devoid of any evidence indicating that the employee was intoxicated at the time of the accident, the injury took place at a relatively early hour, the employee was proceeding to the first restaurant to meet the other drivers for a ride back to the camp when he was injured and the bar was located a reasonable distance from the camp. Moreover, the employer had acquiesced in the employees' trips to town for meals and recreation on the weekend charter runs to Camp Castaway.

6. We are aware that certain jurisdictions have refused to extend coverage to traveling employees attending to personal recreation or relaxation at the time of the injury. *See e. g. Silver Engineering Works, Inc. v. Simmons,* 180 Colo. 309, 505 P.2d 966 (1973) (employee on business in Mexico who drowned while swimming at a remote beach was on personal errand and therefore death held non-compensable); *Garrett v. Industrial Comm'n,* 600 S.W.2d 516 (Mo. App.1980) (refused to expand coverage to traveling employee on personal business or pleasure); *Hackney v. Tillamook Growers Co-Op.,* 39 Or.App. 655, 593 P.2d 1195 (1979) (truck driver who was injured while arm wrestling after consuming three or four beers over a 5½ hour period during lay-over time held not to have been within the scope of employment); *See also Sauerwein v. Department of Indus. Labor and Human Relations,* 82 Wis.2d 294, 262 N.W.2d 126 (1978).

7. *See e. g. Howell Tractor & Equip. Co. v. Industrial Comm'n.,* 78 Ill.2d 567, 38 Ill.Dec. 127, 403 N.E.2d 215 (1980) (employee's conduct in walking back to motel alone in unfamiliar town after drinking at tavern constituted unreasonable action); *Humphrey v. Industrial Comm'n.,* 76 Ill.2d 333, 29 Ill.Dec. 464, 392 N.E.2d 21 (1979) (denial of compensation upheld where employee was injured while returning to his motel after party on working day); *U. S. Industries v. Industrial Comm'n.,* 40 Ill.2d 469, 240 N.E.2d 637 (1968) (employee injured on midnight pleasure drive in unfamiliar, mountainous terrain was engaged in unreasonable activity); *Hebrank v. Parsons,* 88 N.J. Super. 406, 212 A.2d 579 (1965) (claimant's return trip at 3 a. m. from tavern 25 miles away and in different state from motel not covered).

We limit this decision to cases involving traveling employees. It must be stressed that in all other situations, the question of coverage must still turn on whether the injury arose out of and in the course of employment without regard to tort concepts of reasonableness or foreseeability.[8]

Reversed and remanded.

SHERAN, C. J., and SCOTT, J., took no part in the consideration or decision of this case.

PETERSON, Justice (dissenting).

I respectfully dissent. The majority opinion fails to apply the statutory requirements of "arising out of and in the course of employment" in determining whether compensation is appropriate in this case. Rather, the majority opinion concludes that because the employee's activities at the time of injury were "reasonable," recovery should be allowed. In my view, compensation should be denied, as the facts clearly indicate that employee's injuries did not arise out of and in the course of his employment.

An injury "arises out of" employment when it appears from all the facts and circumstances that there is a causal connection between the employment and the employee's injury. *Bonfig v. Megarry Bros.*, 294 Minn. 180, 199 N.W.2d 796 (1972); *Cavilla v. Northern States Power Co.*, 213 Minn. 331, 6 N.W.2d 812 (1942). The requisite causal connection exists if the employment, by reason of its nature, obligations, or incidents, is the source of the injury-producing hazard. *Nelson v. City of St. Paul*, 249 Minn. 53, 81 N.W.2d 272 (1957).

The shooting incident which resulted in employee's injury outside the tavern was entirely unconnected with his employment. There was no hazard associated with employee's duties as a busdriver that increased his risk of injury beyond that shared by the general public. *See Auman v. Breckenridge Telephone Co.*, 188 Minn. 256, 246 N.W. 889 (1933). The risk of being injured by bullets fired at random by an intoxicated person outside a tavern was not an incident of the exposure occasioned by the nature of employee's work. *See Nelson v. City of St. Paul*, 249 Minn. at 56, 81 N.W.2d at 276. Since employee failed to demonstrate a causal connection between the hazard producing his injury and his employment, it cannot be said that his injury arose out of his employment.

As a condition precedent to recovery of workers' compensation benefits, employee must also prove that his injury occurred in the course of his employment. The phrase "in the course of employment" refers to the time, place, and circumstances surrounding the accident. *Swenson v. Zacher*, 264 Minn. 203, 207, 118 N.W.2d 786, 789 (1962); 1 Larson, *The Law of Workmen's Compensation* § 14.00 (1978). In order to be compensable, an injury must arise within the time and space boundaries of the employment. *Nelson v. City of St. Paul*, 249 Minn. at 56, 81 N.W.2d at 276. An employee is not covered under the statutory definition set

---

8. Injuries that result from reasonable or foreseeable conduct are not compensable if they do not arise out of and in the course of employment. Conversely, injuries that result from unreasonable or unforeseeable conduct are compensable if they do arise out of and in the course of employment. As Professor Larson notes:

suppose that a wheel flew off a high-speed machine, and splashed molten metal from a vat onto the controls of a sprinkler system, which, in turn, set off the sprinklers, which wet a hot light bulb, which exploded just as claimant was yawning, with the result that claimant swallowed a piece of glass. Any such set of improbabilities, of the sort familiar to first-semester tort students, would at an early stage pass out of the bounds of foreseeability, if the word has any connection with reality at all. And yet, if claimant was working at his job, there can be no doubt that he is entitled to compensation, for the injury was clearly connected with his work, although the causal sequence was unforeseeable.

1 A. Larson, *supra*, § 6.60 at 3–9. An in-depth discussion of this requirement is contained in Bradt, *An Examination of the "Arising Out of" and the "in the Course of" Requirements Under the Minnesota Workers' Compensation Law*, 6 Wm. Mitchell L.Rev. 533 (1980); *see also* Kirwin, *Compensation for Disease Under the Minnesota Workers' Compensation Law*, 6 Wm. Mitchell L.Rev. 619 (1980).

forth in section 176.011, subd. 16, except while he is "engaged in, on, or about the premises where his services require his presence as a part of such service at the time of injury and during the hours of such service." It is evident that these requirements have not been met in this case.

Employee was not engaged in performing services for his employer at the time of the accident. He had certain duties to perform on Saturday morning that involved approximately 2 hours of work. After that time, he was free to do as he wished. Employee's accident did not occur during the hours that he was actually discharging his duties as a busdriver. Further, the shooting incident took place at a tavern located some distance from the camp, rather than at a location where employee's services were being performed or where his employment required his presence as a part of those services. It cannot be concluded, therefore, that employee was injured in the course of his employment.

Reliance by the majority on the traveling salesmen cases is misplaced. In situations involving traveling salesmen, identifiable time and space boundaries are generally not imposed. A salesman is considered as carrying his working premises with him and is, therefore, able to structure his own time and hours of service while traveling on his employer's business. He is compensated under the workers' compensation statute because he is constructively on or about the premises where his services require his presence as part of such service at the time of injury and during the hours of such service. *Bonfig v. Megarry Bros.*, 294 Minn. at 184, 199 N.W.2d at 799.

In contrast, employee in this case had a set working schedule and a definite time period in which his duties were to be completed. At the time employee was injured, he was not engaged in pursuing activities that furthered his employer's business. Also, employee's accident did not occur on the premises where his services were being

performed. Consequently, this case is more analogous to *Bonfig v. Megarry Bros.*, 294 Minn. 180, 199 N.W.2d 796 (1962), and *Cavilla v. Northern States Power Co.*, 213 Minn. 331, 6 N.W.2d 812 (1942), in which the court denied compensation benefits.

The majority opinion relies in part on this court's decision in *Epp v. Midwestern Machinery Co.*, 296 Minn. 231, 208 N.W.2d 87 (1973).[1] The unique factual situation in *Epp*, however, is clearly distinguishable from that in the instant case. The employer in *Epp* expressly authorized and assumed the expense of the employee's motel bill, food, and alcoholic beverages. By necessity, the employee, an over-the-road truckdriver, was required to eat or drink at public restaurants. Here, however, employee's meals and lodging, as well as recreational facilities, were provided at the camp. The employer did not reimburse employee for the cost of food and drink incurred while away from the camp. If he chose to have his meals in town, he was responsible for his own transportation and expenses. In addition, the employee in *Epp* was allowed to set his own time and hours of service. In this case, employee had certain duties to perform on the morning of the accident and was then allowed to spend his free time engaging in his own activities. The decision in *Epp*, therefore, is not substantially on point.

Similarly, *Snyder v. General Paper Corp.*, 277 Minn. 376, 152 N.W.2d 743 (1967), also cited in the majority opinion, is inapposite. In *Snyder*, the employee was entertaining a prospective customer at dinner, pursuant to his employer's directions, when he choked on a piece of meat. The court affirmed the award of compensation benefits but indicated that if the dinner had been the result of a distinct departure from business, compensation benefits would not have been allowed. In the case at bar, employee's trip to the tavern was not made pursuant to his employer's instructions. It was a distinctly personal venture neither authorized nor di-

1. A significant portion of the majority opinion also relies on authority from foreign jurisdictions which is contrary to the principles of workers' compensation law established by prior Minnesota cases.

rected by the employer. Because employee was motivated by a personal rather than a business purpose, the reasoning in *Snyder* is not applicable.

Footnote 8 of the majority opinion indicates that injuries resulting from reasonable or foreseeable conduct are not compensable if they do not arise out of the course of the employment. The majority also notes that tort concepts of reasonableness and foreseeability are, in general, not applicable to workers' compensation cases. However, they find that compensation benefits should be awarded in this case because employee's activities at the time of injury were "reasonable."

It is clear that the majority opinion's reasoning is inconsistent with prior decisions of this court that have held that the reasonableness or negligence of the employee's conduct is irrelevant in determining whether the injury arose out of and in the course of employment. *See e. g., Snyder v. General Paper Corp.*, 277 Minn. at 384, 152 N.W.2d at 748 (1967) (contributory negligence of employee immaterial); *Radermacher v. St. Paul City Railway*, 214 Minn. 427, 435, 8 N.W.2d 466, 470 (1943) (neither negligence of employer nor contributory negligence of employee relevant.) [2] The majority opinion creates an exception for traveling employees, based on reasonable conduct, that will inject uncertainty into the application of the workers' compensation statute. *See* Bradt, *An Examination of the "Arising Out of" and the "in the Course of" Requirements Under the Minnesota Workers' Compensation Law*, 6 Wm. Mitchell L.Rev. 533, 564 (1980). Any further attempts to expand the classification of employees subject to this artificial distinction would establish a defense of contributory negligence specifically prohibited by our case law and by Minn.Stat. § 176.021(1) (1980).

2. Consistent with our case law, Professor Larson notes:

> The right to compensation benefits depends on one simple test: Was there a work-connected injury? Negligence, and, for the most part, fault, are not in issue and cannot affect the result. Let the employer's conduct be flawless in its perfection, and let the employee's be abysmal in its clumsiness, rash-ness and ineptitude: if the accident arises out of and in the course of the employment, the employee receives his award. Reverse the positions, with a careless and stupid employer and a wholly innocent employee: the same award issues.

1 Larson, *The Law of Workmen's Compensation* § 2.10, at 5 (1978).

OTIS, Justice (dissenting).

I join in the dissent of Justice Peterson.